FAUST *v.* LITTLE ROCK SCHOOL DISTRICT.

5-607                                                        276 S. W. 2d 59

Opinion delivered March 14, 1955.

*Wright, Harrison, Lindsey & Upton; Barber, Henry & Thurman* and *Rector, Cockrill, Limerick & Laser,* for appellant.

*Rose, Meek, House, Barron & Nash,* for appellee.

GRIFFIN SMITH, Chief Justice. The suit resulting in this appeal was brought by appellee School District to quiet title to Block 179 of the Original City of Little Rock. The District alleged ownership in fee through warranty deed from the City dated March 26, 1870.

Appellants are the heirs of Chester Ashley and Roswell Beebe, who on February 23d, 1843, conveyed to the mayor and alderman of the City, in their corporate capacity, five entire blocks and a fractional one.

Three tracts are involved. The first was what is now Mt. Holly Cemetery on Broadway. A deed requirement was that this property should be used for cemetery purposes only. Another condition was that thereafter interments in Block 179 should be discontinued. Conveyance of this block was to the City—the mayor and aldermen,—to their successors and their survivors in office ". . . as trustees for the uses and purposes hereinafter mentioned," and ". . . upon the special trust and considerations as hereinafter mentioned, . . . subject also to the restrictions and conditions hereinafter made, . . . [and] for the special purpose of being appropriated and used by [the City] for the erection thereon of a city hospital, workhouse, or any other public buildings as may to them seem most conducive to the public good, and the same shall not be sold or disposed of, nor shall the title vest in the City except upon the conditions aforesaid." The habendum repeated the grantors' terms—that the conveyance was ". . . upon the several conditions and for the special uses and purposes herein set forth and specified, and none other whatsoever."

The third conveyance was a grant of Block 154, and was for the purpose of erecting thereon a powder magazine, to be moved from Block 124.

Title remained unchanged until after the date first mentioned (March 26, 1870). Then, pursuant to an ordinance of the preceding day, James V. Fitch as president of the City Council conveyed Block 179 ". . . to the School District of Little Rock." Peabody Schoolhouse was erected on the site in 1870, and in varying physical conditions it has remained as a facility appurtenant to the educational system. Gradually the contiguous area became commercialized, with a shifting of population. Result is that the school's patronage or enrollment does not justify its continuation. The District's thought is that the property should be sold and the proceeds used for school purposes in other localities within the Board's jurisdiction. From an original consideration of $7,000 paid to the City, value of the property has enhanced to an estimated worth of from $350,000 to $400,000.

Appellants contend that the Ashley-Beebe deed created a charitable trust in perpetuity upon condition subsequent. They disagree with the Chancellor's finding that the City's conveyance was a breach of condition, creating at that time a right of reëntry. In the alternative it is insisted that irrespective of reëntry rights, the land came to the District charged with a trust clearly created by the grantors, hence the present conditional ownership must conform to the creative design.

The Chancellor did not think it was necessary to say whether the Ashley-Beebe deed reserved conditional rights in the grantors inuring to their heirs. His view was that even if pertinent events—in the absence of mandatory factors—would have invested appellants with reëntry rights, or if as interested taxpayers they would have been justified in claiming that the property could not be sold and the proceeds used as planned, still the conveyance of March 26th, 1870, violated conditions of the grant, thus setting in motion the statute of limitation and making applicable the plea of laches. Both defenses were interposed.

Appellants urge that because the word "condition" appears in the deed five times—four of these references being to Block 179—the granting intent was to write into

the document a condition subsequent. Chester Ashley, they say, was a lawyer exceptionally well versed in his profession, an outstanding attorney of his day. Therefore the choice of words must have formed a part of his obvious plan to compel obedience to the trust or in the alternative establish in the grantors and their heirs the rights here contended for. Supporting their theory that limitation should not be sustained and in furtherance of the contention that they are not guilty of laches, appellants urge that when the City conveyed to the District, use of the property thereafter was in all essential respects similar to the broad plan conceived by Ashley and Beebe: it was a public purpose so completely in harmony with the grantors' scheme that the heirs should not be charged with notice that alien dominion occurred. It could not, then, be said with reason that a breach of the trust had taken place.

It is recognized by the heirs that their predecessors imposed upon the City a restraint against alienation and that this stricture was violated when the District took the property. But it is reasoned that the transfer merely imposed upon the grantee conditions the City was charged with. So analyzed it would follow that the City's misconduct could not result in an avoidance of the conditions. On the contrary they were passed on to the District with all of the sanctity that a trust imposed.

Conceding appellants' first premise—that Chester Ashley was a skilled practitioner—appellee counters with the argument that this is a point in its favor. For, say counsel, the very circumstance that the writer of this deed did not by express language insert a right of reentry if conditions were broken augurs the absence of an intention to create such an estate. A further insistence by appellant is that the grant was a charitable donation—a contention appellee thinks is contradicted by the City's act in releasing to Ashley and Beebe its claim to Block 124. This supposed valuable consideration prefaces the granting clause in the conveyance of Block 179. Although it is stipulated that the record title to Block 124 was in Ashley, appellee is convinced that various deed recitals

sustain a presumption that the City had some interest in the land.

Appellee traces the development of Little Rock's public school system, showing that the first municipal appropriation for education occurred in 1853 when $500 was made available. Applicable statutes in 1870 made school operations a township and county function. City participation was ultra vires until 1869, and due to this state of the law Ashley could not have envisioned public school usage when Block 179 was conveyed as land upon which "a city hospital, workhouse, or any other public building" should be erected, to the exclusion of all others.

Appellants urge with impressive sincerity that the School District became a substituted trustee; but appellee points to minutes of the City Council and an ordinance as authority for the conclusion that dealings were arms-length transactions, concluded after orthodox bargaining had occurred. The City's deed incorporated a covenant of warranty which is ordinarily thought to be contrary to use restrictions, restraint, alienation, or any condition subsequent that might have been impliedly expressed. Appellee believes that conduct of the present grantee has accorded with a presumption of unconditional ownership. Buildings have been maintained and remodeled, and on four occasions mortgages or trust deeds have been executed to secure bonds. Each contained an unconditional warranty of title.

The controlling consideration is whether the Ashley-Beebe deed was on condition subsequent, with forfeiture for violation and a right of reëntry; and whether the City's transfer to the District was a breach of conveyance limitations, thus conferring upon appellants a right of action that has been fatally delayed.

Text writers and court decisions are in agreement that conditions such as appellants here urge are not favored. Where reasonable ground for avoidance may be found it is usually held that the dead hand of another generation must not be allowed to encroach upon public policy unless the legitimate purposes of a grantor or tes-

tator are free from ambiguity. But opposing this concept there is the judicial duty to safeguard trust transactions when they are such in fact. Here it is insisted that clarity of expression leaves nothing to conjecture, and that the intention of the first grantors is so clearly reflected that the legal attributes of conditions subsequent must of necessity be invoked. There is reliance upon Ashley's repeated use of the word "condition," which is coupled with the grantors' expressions of trust and confidence. Emphasized is the argument that in the absence of specific provision for forfeiture the grantors' general scheme must be considered; that there is no absolute requirement that reëntry language be used, and its employment is evidentiary only. See *Grissom* v. *Hill,* 17 Ark. 483. Cases from other jurisdictions are cited.

The great weight of authority supports the view that conveyances will not be adjudged to have created conditional limitations unless intention of the grantor is positively delineated. Reasons for the rule are many and compelling. Foremost is the necessity for removing technical objections preventing ready marketability. If a transferer wishes to restrict the use of realty or impose conditions upon the transferee, he must leave no doubt as to what is meant; and if, after a fair appraisal of the language utilized uncertainty is present, freedom from restraint will be decreed. Utilization of "condition" is insufficient unless associated with other words necessitating a decision that the grantor intended to effectually circumscribe the grantee's use. Typical of language supporting this result is Scott on Trusts, § 401.2, p. 2125, the text being:

"It is in many cases a question of interpretation whether a provision in the trust instrument amounts to a condition or whether it is merely intended to impose duties upon the trustee. It is one thing to say that the trustees shall do certain things; it is a different thing to say that if they do not the trust shall end. Since breach of conditions results in forfeiture, the courts are very slow to interpret a provision as imposing a condition.

In the absence of language clearly indicating an intention to impose a condition, the courts do not interpret the trust instrument [in that manner]. . . . The mere fact that it is provided in the instrument that the property shall be applied 'forever' to certain purposes, or for such purposes 'and no other purposes,' does not manifest an intention on the part of the testator to create a condition. Even though it is provided in the instrument that the property is given 'upon condition' that it be applied to certain purposes, this does not necessarily manifest an intention to create a condition. Unless there is a provision for the reverter of the property the instrument will rarely be construed as imposing a condition. The word 'condition' is frequently used by testators who have no thought of imposing a real condition, but who intend merely to impose a duty to apply the proceeds to a particular purpose.''

We do not construe the Grissom-Hill case as authority for the proposition that the absence of a provision for reëntry is unimportant and harmless. The issue was not clearly presented because it was not the trustees who appealed. The issue resolved was whether a mechanic's lien could be enforced against a charitable trust.

It is true, as appellants argue, that the presence of a clause permitting reëntry on condition broken is not, as a matter of law, essential to a determination that the grantor could have meant nothing else. Other language may supply the deficiency; but the requisite is that the expressions used must point to but one conclusion. The grantor is obliged to eliminate doubt concerning his intentions. If he fails to meet this obligation courts will not supply the want. That a supplied interpretation is undesirable is shown by the fact that the word ''condition'' is often used without intending to create a perpetual or extensive reservation. For breach of an imposed duty the grantor may still have a right of action for damages. *Bain* v. *Parker*, 77 Ark. 168, 90 S. W. 1000.

Appellants and appellee are not in agreement as to the nature of the trust. Appellants say it was charitable,

appellee denies; and, as has been previously stated, appellee lays stress upon the supposed value of consideration. Even if it should be agreed that the transfer was gratuitous and that a trust was imposed, still the rule against conditions affecting title to the *res* through reëntry after forfeiture is particularly applicable where the grantor receives no personal benefit. Thus, if the grantors intended to set up a charitable trust their obligation to provide a recourse for breach of conditions was greater.

It is urged that the deed must be construed in the light of decisions current 112 years ago rather than through application of modern texts and judicial opinions. But the early common law did not favor conditions subsequent, although today's authorities are more restrictive than judgments and decrees of a century ago.

The remaining question is whether the deed from the City to the School District imposed upon Ashley and Beebe and their heirs a duty to act, and whether failure to do so was fatal.

Let us revert to appellants' contention that because the conveyance to the City recited that Block 179 was transferred ". . . for the special purposes of being used and appropriated by said parties of the second part for the erection thereon of a city hospital, workhouse, or any other public building as may to them seem most conducive to the public good." Let us also consider the contention that the City's transfer to the District was within the grantors' contemplation and that this is revealed by the quoted language,—still it is urged that when the City transferred to the District for a consideration and with a general warrant of title, the heirs could not be charged with notice that a condition subsequent had been broken. Therefore, say appellants, they have not heretofore been under a duty to act.

It is abundantly clear that public schools—schools now integrated into a system quite commonplace—were unknown when the Ashley-Beebe deed was made. It is therefore unlikely that the grantors thought of the par-

ticular purpose for which, in succession, the land was used. A city hospital, workhouse, "or other public buildings" enumerated at a time when cities were without power to maintain schools would not include a use such as that which was made when the District received its deed. While appellants strenuously insist that the City intended to convey to the District as trustee, there is nothing in the deed to affirm this view.

Sequential transactions include an unconditional sale by the City, subsequent use by the District without reference to trust equations or conditions of any character, and long-continued silence by appellants. The transactions were sufficient to sustain the decree. Related questions are argued, but none would affect the result.

Affirmed.

Mr. Justice GEORGE ROSE SMITH did not participate in the consideration or determination of this case.