Lloyd L. HAYS et ux v. Ottis WATSON et ux

5-5557                                    466 S. W. 2d 272

Opinion delivered May 3, 1971

*Walter R. Niblock* and *Truman Smith,* for appellants.

*Charles W. Atkinson,* for appellees.

J. FRED JONES, Justice. This appeal originates from a suit in the Washington County Chancery Court brought by the appellees Ottis Watson and his wife against the appellants, Lloyd L. Hays and his wife to enforce restrictive covenants contained in a bill of assurance, and for an injunction against the use of a septic tank sewage disposal system installed by Hays on lots purchased from Watson. The chancellor granted the relief prayed and we agree with the chancellor.

The facts are briefly these: In 1960 Ottis Watson and his wife, Helen, subdivided some land they owned in Washington County and platted it into 105 residential building lots dedicated to the public as Bird Haven Terrace Addition to the City of Fayetteville. On June 23, 1960, they filed for record a bill of assurance for Bird Haven Terrace Addition, the pertinent provisions of which, as applied to the case at bar, are as follows:

> "2. No lot shall be used except for residential purposes, no building shall be erected, altered, placed, or permitted to remain on any lot other than one detached single family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars.

> 7. No noxious or offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may be or may become an annoyance nuisance to the neighborhood.

> 11. No lot shall be used or maintained as a dumping ground for rubbish, trash, garbage or other waste shall not be kept except in sanitary containers. All incinerators or other equipment for the storage or disposal of such material shall be kept in a clean and sanitary condition.

12. No individual sewage-disposal system shall be permitted on any lot unless such system is designed, located and constructed in accordance with the requirements, standards and recommendations of State Approval of such system as installed shall be obtained from such authority.

14. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from the date these covenants are recorded for successive periods of 10 years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part.

15. Enforcement shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any covenants either to restrain, violation or to recover damages."

The above provisions are obviously deficient in punctuation and sentence structure but their meaning, as relates to this case, is clear.

Block "F" of Bird Haven Terrace Addition consists of 14 lots consecutively numbered from south to north along the east boundary line of the Addition. Lloyd L. Hays and his wife, Joan, own land immediately east of Bird Haven Terrace Addition and their west boundary line coincides with the east boundary line of Block "F" in Bird Haven Terrace Addition. Mr. and Mrs. Hays maintain a trailer park on their property and as of the date of trial, they had 52 trailers in the park. About June 3, 1969, Mr. and Mrs. Hays purchased from Mr. and Mrs. Watson, through a Mrs. Elizabeth Beaty, Lots 3 and 4 in Block "F" of Bird Haven Terrace Addition. Prior to the purchase of the lots Hays had plans and specifications prepared for a septic tank sewage disposal system designed for the lots and to accommodate or service 45 of his trailer spaces. Immediately following the purchase of the lots, Mr. and Mrs. Hays started construction of their sewage disposal plant, thereon, resulting in the decree as

already stated and as hereafter more specifically set out. Mr. and Mrs. Hays have designated the following points on which they rely for reversal:

"That the appellees did not sustain their burden of proof in presenting clear, cogent, and decisive evidence as to the alleged violation of the covenants in the bill of assurance.

It was error for the court to overrule the appellants' demurrer to the evidence.

That the appellees did not present clear, cogent and decisive evidence of any irrepairable damage.

That the court did not give sufficient weight to the appellants' compliance with all State and local building requirements for a sewage disposal system."

None of the testimony is abstracted in this case, nor is the bill of assurance abstracted. It is rather difficult for any one of the seven members of this court to whom has been assigned the transcript along with a set of briefs, to circulate the transcript among the other six members of the court for a determination of whether the appellee has sustained his burden of proof by the evidence, or whether the court erred in overruling a demurrer to the evidence, or whether evidence is clear as to damage, or for any other purpose necessary to a clear understanding of the case. It is even more difficult and time consuming for the six members of the court to whom the case has not been assigned, to review the evidence from a single, and in many instances, a voluminous record. See *Hurley* v. *Owens,* 238 Ark. 874, 385 S. W. 2d 636.

In the case at bar, however, the excellent memorandum opinion with which the chancellor has favored us enables us to avoid the unpleasant duty of applying our Rule 9 (d). As a matter of fact, we have thoroughly examined the chancellor's opinion and his application of the law to the evidence recited, so nearly coincides with our own opinion, that we adopt it as the opinion of this court.

Before quoting the chancellor's opinion, however, we emphasize that this was originally an action for the enforcement of restrictive covenants in a bill of assurance and was not, as might be interpreted from the appellants' argument, a suit to enjoin or restrain the creation of a prospective nuisance. After stating some of the facts as above set out, the chancellor continues:

"Hays commenced preparations for construction of his sewage disposal system in April, 1969, before he acquired title to lots 3 and 4 (Stp. Ex. No. 8), and by June 9, 1969, or shortly thereafter construction had commenced. At some time, not certainly fixed by Watson, he observed excavation on lots 3 and 4, and upon inquiry of Hays, learned its purpose, and upon voicing his objections was told by Hays that the latter had authority from the city, and Hays may have told him he had authority from the state, as well. It is not shown that plaintiff had any knowledge of the projected construction before he saw the excavation. This suit for injunction was filed on August 26, 1969, at which time, according to Hays, the total job was about 2/3 completed, and was completed about two months later.

At the time construction commenced in June, 1969, plaintiff still owned 94 of the original 108 lots. Prior thereto, all of the unsold lots were listed for sale at $850.00 per lot, with The Stanton Company, a licensed real estate brokerage business in Fayetteville. No lots have been sold since construction started; The Stanton Company, by letter to Watson, October 16, 1969, (Plf. Ex. 1) advised that persons theretofore prospectively interested in buying all of Bird Haven Terrace were no longer interested, in view of completion of the sewer system on lots 3 and 4. Plaintiff, on his own account, has made no lot sales when the fact of the sewer system was discovered by prospects. It is shown that one residence was under construction on a lot diagonally across the street from lots 3 and 4, after the sewer system construction was commenced, but the only evidence in the record

(Watson's) is that this lot was sold before Hays started his construction.

There is no evidence that the sewer system has thus far caused any noxious or offensive odors, no manifestation of surface percolation of sewage effluent, nor that the surface of lots 3 and 4 presents other than a generally grassy and green appearance. Evidence by the city plumbing inspector indicates that the field was properly laid out and should function properly.

Watson contends in essence, that Hays' actions are a clear violation of the covenants in the Bill of Assurances; that the existence of the sewer system has inhibited his sale of lots, and that he is entitled to protection and enforcement of the Bill of Assurances.

Hays contends that no nuisance condition has in fact been created or made manifest, no damage has been suffered by Watson; and that it would be inequitable to enforce the covenants against him under these harmless conditions, and after he has expended substantial sums in construction.

The general rule governing the interpretation, application and enforcement of restrictive convenants of the kind here considered is that the intention of the parties as shown by the covenant governs. 20 Am. Jur. 2d 755, 'Covenants, Conditions, etc.,' Sec. 186. The rule of strict construction against itself limited by the basic doctrine of taking the plain meaning of language employed.

The latest reported Arkansas case squarely in point is *Casebeer* v. *Beacon Realty*, 248 Ark. 22, where, after stating the strict construction rule, it is said, at page 26:

'This doctrine was recognized by this court in *Faust* v. *Little Rock School Dist.*, 224 Ark. 761, 276 S. W.

2d 59, wherein we said that where there is uncertainty in the language by which a grantor in a deed attempts to restrict the use of realty, freedom from restraint would be decreed. We have also held that when the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed and that it is improper to inquire into the surrounding circumstances or the objects and purposes of the restriction for aid in its construction.'

This latter language is consonant with general authority, as stated in Am. Jur. 2d (supra) Sec. 187:

'. . . but such strict rule of construction shall not be applied in such a way as to defeat the plain and obvious purpose of the restriction.'

The plain purpose of the restrictions in this case, particularly set out in item 2 of the Bill of Assurances, above quoted, is to limit the use of each lot in Bird Haven Terrace to single family, residential purposes. Item 12 of the Bill of Assurances prohibits an 'individual sewage disposal system' on any lot unless it meets with 'State approval.'

These two items must be read together, and can mean nothing other than that a single family residence on each lot (no more permitted) can have only a single disposal system. * * * The covenants mean, quite clearly, one dwelling house, one septic tank sewage disposal system.

The conclusion is inescapable that the construction of numerous septic tank sewage disposal systems on and under lots 3 and 4, even without dwelling houses, is a plain violation of the plain, unambiguous restrictions of the covenants. It is equally plain that the purpose of the restriction is to prevent such multiple systems, as a matter of general assurance and protection to all lot owners in the addition, whether a demonstrable nuisance condition exists or not.

On the question of damages to Watson, as a requisite to injunctive relief, it is true that the loss of lot sales by Watson is only speculative. But the general rule does not require a showing of damages. Again referring to Am. Jur. 2d (supra) Sec. 330:

'As a general rule, it is not necessary to show damages in order to obtain equitable relief against violations of a restrictive covenant.'

The fact remains that no lots have been sold, and the only evidence of record as to why is the existence of the large sewage disposal field. Defendant Hays' cited case of *Ryall* v. *Waterworks*, 247 Ark. 431, is not in point. That case dealt with attempted injunction against a prospective nuisance, not the enjoining of violation of a restrictive covenant.

On the related point of Watson's right to have mandatory cessation and/or removal of Hays' sewage disposal network, as against Hays' money investment, the text writer in Am. Jur. 2d, Sec. 313 says:

'Mere pecuniary loss to the defendant, as a result of the enforcement of a restriction will not prevent a court of equity from enforcing it.' Cited as footnote support for this statement is *Storthz* v. *Midland Hills Land Co.*, 192 Ark. 273. In that case, this language appears:

'It has been held . . . that the fact that the restricted property is of less value for residential purposes than it would be for some other purpose is no valid reason to ignore the restriction.'

Thus, here, while lots 3 and 4 may be of little or no value to Hays for residential purposes, and the fact that he has chosen to render them less valuable by expending his money for purposes violative of the restrictions, is no valid reason for denying Watson the right of enforcement, even though it be costly to Hays. To the same general effect, see the con-

cluding paragraph in the opinion of *Robertson* v. *Berry*, 248 Ark. 267.

The court concludes that plaintiffs are entitled to the relief sought, insofar as continuation of use of the entire sewage disposal system on lots 3 and 4 is concerned. Defendants will be enjoined from such use henceforth.

Because the restrictive covenant is addressed to the limitation of only one system per lot, no harm is seen to plaintiffs, nor any violation of covenant effected, if Hays desires to use his existing system as a sewage outlet for a single residence only, on each lot; in this case, one of his mobile home units. Or, if he should build a dwelling on either lot, that dwelling is entitled to be served, as a single unit, by such system as is now in place.

No further protection would be afforded Watson by requiring Hays to dig up and remove all of the existing system; Hays may do so if he wishes as, for example, to cut his losses, but he will not be required to do so.

It is therefore, ordered, adjudged and decreed that the defendants, Lloyd L. Hays and Joan C Hays, be, and they are hereby enjoined from using and operating their private sewage disposal system installed underground on Lots 3 and 4, Block F, Bird Haven Terrace, a subdivision in the City of Fayetteville, Arkansas, and said defendants be, and they are hereby ordered, to disconnect the discharge lines running from their mobile home park upon their adjoining property to said sewage disposal system within sixty days after this date, and in disconnecting said lines running from their mobile home park to the septic tank or tanks located on said Lots 3 and 4, Block F, Bird Haven Terrace it shall be done in such a manner that they cannot be reconnected.

It is further ordered, adjudged and decreed that the said defendants, Lloyd L. Hays and Joan C. Hays, husband and wife, be, and they are hereby permanently enjoined from using their sewage disposal system located on Lots 3 and 4, Block F, Bird Haven Terrace to serve any portion of their said mobile home park and said sewage system may be used only to serve not more than two single family residence units, only one of which may be located on each of said lots.

The costs of this action are assessed against the defendants."

The decree is affirmed.