Bruce CONSTANT et ux *v.* Sam HODGES et ux, et al.

86-312                                         730 S.W.2d 892

Supreme Court of Arkansas
Opinion delivered June 15, 1987

*Ivester, Henry, Skinner & Camp*, by: *David P. Henry*, for appellant.

*House, Wallace & Jewell, P.A.*, by: *Don F. Hamilton* and *Janice W. Vaughn*, for appellee.

DARRELL HICKMAN, Justice. This is a suit to enforce a restrictive covenant in several instruments applicable to the Robinwood Subdivision of Little Rock. The appellants owned one of the large lots in Robinwood on the corner of Cantrell Road and Misty Lane, consisting of 1.73 acres. Their house burned in 1983, and the lot remains vacant. The appellants applied to the Little Rock Planning Commission to divide their lot into four smaller lots. Permission was denied. A request was then made to divide the lot into two lots. That request was granted. A request for another split was filed but deferred when this lawsuit was filed. The appellees, several residents of Robinwood, sued to prevent breaking up the lot and to enforce restrictive covenants applicable to Robinwood. The chancellor held the restrictive covenants limited the use of the lot to a single family residence, and it could not be divided.

The appellants make two arguments on appeal. First, their land was not subject to such a restriction, and second, the chancellor was wrong in finding the existence of a general plan of development which would permit enforcement of the restrictive covenants in question. The chancellor was unquestionably right and we affirm the decree.

It is agreed that there are three relevant instruments. First, a bill of assurance was filed in 1949 which provides in part: "The

lands hereinbefore described shall be restricted to detached single-family residences; garages, servants' quarters, and other outbuildings must be clearly incidental to residential use of said land." The bill of assurance said its purpose was to carry out . . . "a general plan to develop said lands as a high-class suburban residential property." The parties agree a deed to a predecessor in title of the appellants is applicable and contains this language: "This conveyance is subject to the reservations, covenants, and restrictions set forth in the Bill of Assurance dated November 15, 1949, . . . Only one detached single-family residence with only one story at or above ground level . . . shall be erected. . ." The same date the deed was executed, a memorandum of agreement was executed and later filed. It provided in part:

> In addition to the provision contained in said deeds that only one detached single-family residence with only one story at or above ground level shall be erected, it is hereby expressly agreed that no residence shall be erected . . . if the main floor area of such residence . . . is less than two thousand five hundred (2,500) square feet . . . It is agreed that the provisions of this agreement shall run with the said land.

Nathaniel Griffin, who was director of city planning in Little Rock in 1977 and has a masters degree in city planning, testified at length about the Robinwood Subdivision. Some of his testimony is especially relevant:

> The area is virtually the same as it was in 1977, with the possible exception of the house with the white wall around it and the Constant house which burned in 1983. The area has been remarkably stable over the years in terms of its livability. The Gibsons' [original owners of the land] original objective as set forth in the Bill of Assurance has been achieved over time and the area remains an attractive, residential environment, certainly one of the best in the City.

> \* \* \* \*

> The Cantrell Place West proposal [the appellants' plan] would have an adverse effect on the property values in the area, but the effect would depend on what future

changes occurred as a result of the development and I could not be specific as to the magnitude of change. It is not the thing you qualify in dollars.

\* \* \* \*

. . . I am quite familiar with all the residential development patterns of the City and would say that the Robinwood area has among the largest lots of any residential district. These large lots on a major arterial represent the only way that you can have an established residential character that can be preserved.

\* \* \* \*

. . . [T]he division of the Constant property into two or four lots would be a negative factor because it would communicate to everyone in the area that it is not going to be a sacrosanct, single-family area. That the community will consider alternate uses, and that is a destabilizing factor.

\* \* \* \*

. . . There is absolutely no reason why they could not build a new home on that 1.73 acre lot if they chose to do so.

W. P. Hamilton, a Little Rock lawyer, testified he was personally familiar with the development of Robinwood. He said: "It is my opinion that the Constants' proposals are inconsistent with the development pattern in the neighborhood and would adversely effect property values."

Sam Hodges, one of the appellees, testified that he had lived in Robinwood for 20 years. He said:

In my opinion, a subdivision of the Constant property into two or four lots would have a deleterious effect, reducing the value of the property, destroying what we've got and the visual effect of the Robinwood neighborhood. The pattern of development has been maintained since 1967, except for landscaping changes. The lot split would torpedo our development. There is nothing that can be done with the Constant lot except to build a nice single-family dwelling.

I think the homes in the area would average $250,000 with some below, and then some much more than that, over $500,000.

After hearing the testimony and examining the documents, the chancellor made these findings:

The character and nature of the Robinwood Subdivision referred to in the Bill of Assurance signed by Cecil Gibson and Vera Gibson has been and is single-family residences consisting of very valuable, large homes on large lots. The nature of the neighborhood and this pattern of development have not changed since the lands described in the Bill of Assurance were developed beginning in 1949, and this pattern has continued through the present time. Although there may have been some violations (as alleged by defendants) of some of the provisions of the Bill of Assurance or some of the restrictions contained in deeds subsequently conveying lands subject to the Bill of Assurance, those violations have been minor and they have not destroyed the purpose of the Bill of Assurance or deed restrictions and these violations have not adversely affected the adjoining property owners.

On appeal we consider the evidence in a light most favorable to the appellee. *Sipes* v. *Munro*, 287 Ark. 244, 697 S.W.2d 905 (1985). We do not reverse a finding of fact by a chancellor unless it is clearly wrong. ARCP 52; *Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986). Using this criteria, the evidence overwhelmingly supports the chancellor's finding that a general plan of development existed for Robinwood. That is important because if no general plan of development exists, the general rule is that restrictive covenants cannot be enforced. *Jones* v. *Cook*, 271 Ark. 870, 611 S.W.2d 506 (1981). The test of whether such a plan exists is "whether substantial common restrictions apply to all lots of like character or similarly situated." *Jones* v. *Cook, supra.*

In this case the existence of large lots with single family residences has remained unbreached since its inception. The appellants attack the three instruments in detail, arguing that they do not apply for several reasons: The bill of assurance does not prohibit dividing a lot; the trial court did not specify

which of the three instruments was binding or a basis for his decision; the deed contained no restrictions in the granting clause, and the only restriction contained therein appears after the habendum clause with none in the granting clause; and the covenant did not "run with the land." On appeal our only duty is to decide if the chancellor was wrong. Indeed, if he reaches the right result but for wrong reasons, he will be upheld. At one point the court remarked:

> . . . But, as they sold the property, further restrictions were put on it, and it does run with the land, as it says in those others, but you have to read all of the instruments together to reach a conclusion as we do in many cases in the law to reach whatever result that we're going to try to reach.

This is apparently what the chancellor did, considered all the instruments, in deciding that the restrictive covenant did exist which prohibited dividing this lot. In reviewing instruments, our first duty is to "give effect to every word, sentence and provision of a deed where possible to do so and give effect to the intention of the parties." *Gibson* v. *Pickett*, 256 Ark. 1035, 512 S.W.2d 532 (1974). That intent in this case is gathered from all the instruments.

We agree with the appellees that there is little room for doubt that these instruments contain a restrictive covenant that prohibits the action the appellants seek to take.

Affirmed.

GLAZE, J., not participating.