Terry HOLADAY and Sandra Holaday *v.* Roberta
FRAKER, et al.

95-909                                    915 S.W.2d 280

Supreme Court of Arkansas
Opinion delivered February 19, 1996
Substituted opinion delivered March 18, 1996
[Petition for Rehearing denied March 25, 1996.]

*Pawlik & Associates*, by: *Kevin J. Pawlik* and *Ella Maxwell Long*, for appellants.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *David R. Matthews*, for appellees.

ANDREE LAYTON ROAF, Justice. This appeal arises from a chancellor's order finding that appellants had violated a restrictive covenant which prohibited use of their property for other than residential purposes, and requiring that appellants remove

a shop building they constructed on the property. Appellants assert the chancellor erred in 1) interpreting the restrictive covenant to apply to the building erected by appellants and; 2) granting injunctive relief which required that appellants remove the building. We find no error and affirm.

Appellants Terry and Sandra Holaday purchased a lot with a house and two car garage in the Willow Oak Place subdivision in Rogers, Arkansas. A protective covenant and a bill of assurances encumbered the lot, and provided that "all lots in Willow Oak Place subdivision shall be used exclusively for residential purposes." The bill of assurances, which was adopted by all homeowners in the subdivision in 1988, also stated that "no structure of a temporary character, trailer, basement, tent shack, barn, or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently." The warranty deed to the property in question also contained the requirement that "all lots in FRAKER SUB-DIVISION #1 shall be used exclusively for residential purposes." The warranty deed further provided that "no dwelling shall be erected . . . in said subdivision other than a detached, single family dwelling, not to exceed two and one-half stories in height and a one, two or three car garage." This subdivision was initially created by appellee Roberta Fraker. Appellants purchased the lot in question by warranty in 1989, and were fully aware of the protective covenant and bill of assurances.

In April, 1993, appellants constructed a blue metal shop building approximately thirty (30) feet by fifty (50) feet with fourteen (14) foot high walls on the property. Appellants claim to have gotten permission from appellee Fraker before building the shop. On September 19, 1994, appellee Fraker filed a complaint in chancery court alleging that appellants had violated the bill of assurances and protective covenants of the subdivision. Fraker subsequently filed an amended complaint adding other appellees, who also are residents of the Willow Oak Subdivision, further alleging that appellants undertook to perform commercial automobile repairs in the outbuilding and also boat repairs, both for compensation.

Appellants filed a counterclaim against appellee Fraker alleging appellants had contacted Fraker to seek assurances that the proposed outbuilding would not violate the bill of assurances and protective covenants. Appellants alleged that during their

conversation with Fraker the appellants disclosed to Fraker the type, size and location of the shop building, and that appellee Fraker represented to appellants that this type of building would not be in violation of the restrictive covenants. Appellants further made estoppel, false representation, and negligence arguments for recovery against Fraker. The lower court dismissed appellants' action against Fraker pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure.

The appellees' cause of action was tried on May 3, 1995. The Chancellor found that appellants had violated the restrictive covenant by erecting a building of the size suitable for commercial purposes. The court further ordered appellants to remove the building from their property within six months. An order for stay of judgment was granted to allow appellants to appeal the lower court's decision.

■ Appellants first argue that they have not violated any of the restrictions contained in the covenant, bill of assurances, or warranty deed. Although we try chancery cases de novo on the record, we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Welchman v. Norman*, 311 Ark. 52, 841 S.W.2d 614 (1992). Deference is given to the superior position of the chancellor to judge the credibility of witnesses. *Riddick v. Streett*, 313 Ark. 706, 858 S.W.2d 62 (1993). In order to overturn the chancellor's ruling, the appellants must demonstrate that the trial court abused its discretion by making a judgment call that was arbitrary or groundless. *Ingram v. Wirt*, 314 Ark. 553, 864 S.W.2d 237 (1993). We cannot say that the trial court's determination was completely erroneous in this instance.

■ Appellants correctly state that courts do not favor restrictions upon the use of land, and if there is a restriction on the land, it must be clearly apparent. *McGuire v. Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988). Appellants rely heavily on *Casebeer v. Beacon Realty*, 248 Ark. 22, 449 S.W.2d 701 (1970), for the proposition that restrictive covenants are to be strictly construed against limitations upon the free use of property, and all doubts resolved in favor of the unfettered use of the land. Appellants assert that any doubts are to be construed strictly against those seeking to enforce them and liberally in favor of freedom in the use of land. *Casebeer* at 25.

■  However, in later cases, we have stated that the general rule governing the interpretation, application and enforcement of restrictive covenants is that the intention of the parties as shown by the covenant governs. *McGuire* at 289. The rule of strict construction limited by the basic doctrine of taking the plain meaning of language employed. *Hays* v. *Watson*, 250 Ark. 589, 466 S.W.2d 272 (1971). In *Hays*, we recognized the doctrine of strict construction stating ". . . . where there is uncertainty in the language by which a grantor in a deed attempts to restrict the use of realty, freedom from restraint should be decreed; . . . when the language of the restrictive covenant is clear and unambiguous the parties will be confined to the meaning of the language employed; and it is improper to inquire into the surrounding circumstances or the objects and purposes of the restriction for aid in its construction." However, we further stated ". . . but such strict rules of construction shall not be applied in such a way as to defeat the plain and obvious purpose of the restriction." *Hays*.

■  Moreover, we stated in *McGuire* that where no general plan of development exists, restrictive covenants in either a bill of assurance or a deed conveying the land are not enforceable. *McGuire* at 290. The test of whether such a plan exists is whether substantial common restrictions apply to all lots of similar character or similarly situated. *Id.* Here, of course, a general plan or scheme of development exists because all homeowners in the subdivision adopted the bill of assurances and restrictive covenant in 1988. Further, appellants were fully aware of the provisions contained in their warranty deed and restrictive covenant when they purchased the lot. One taking title to land with notice that it is subject to an agreement restricting its use will not, in equity and good conscience, be permitted to violate its terms. *Harbour* v. *Northwest Land Co.*, 284 Ark. 286, 681 S.W.2d 384 (1984).

Appellants' warranty deed and bill of assurances clearly state that all *lots* shall be used exclusively for residential purposes. However, appellants contend that since the bill of assurances states that *no dwelling* shall be erected on any lot other than a single-family dwelling with no more than a three car garage and also no outbuilding shall be used on any lot at any time as a residence, the restrictive covenants do not specifically exclude their blue metal shop building because it is not a dwell-

ing, nor is it used as a residence. We agree that appellants' building is not a dwelling, the definition being a place to live in, *The American Heritage Dictionary*, 431 (2d ed. 1976), nor is the building being used as a residence. However, the trial court's determination was based on whether appellants' lot was being used exclusively for residential purposes.

The trial court specifically found that appellants violated the covenant by placing on their lot a bright blue metal shop building suited for commercial purposes. Appellant Terry Holaday admitted to bringing automobiles and boats of others to the shop building, and repairing them for compensation. Appellees testified that appellant regularly brought cars to the shop to fix and that the appearance of the shop building caused the value of their property to decrease.

The Arkansas Court of Appeals stated in *Briarwood Apartments v. Lieblong*, 12 Ark. App. 94, 671 S.W.2d 207 (1984):

> There is no ambiguity in the expression 'No lot shall be used for other than residential purposes.' Any additional use must be reasonably incidental to residential uses and such an inconsequential breach of the covenant as to be in substantial harmony with the purposes of the parties in making the covenants, and without substantial injury to the neighborhood.

Citing *Thompson* v. *Squibb*, 183 So.2d 30 (Fla. D.C. App.2d 1966).

In this instance, the lower court made a determination that appellants' building constituted a violation of the provision that all lots be utilized exclusively for residential purposes. The chancellor's determination will not be reversed by this court unless it is clearly erroneous. *Constant* v. *Hodges*, 292 Ark. 439, 730 S.W.2d 892 (1987). Although there is ambiguity in the language of the covenant, the plain and obvious purpose of the restriction is clear, that the lots be used exclusively for residential purposes. From our review of the evidence, we cannot say that the lower court's determination was clearly erroneous.

Appellants also contend that the trial court clearly

abused its discretion to grant injunctive relief by ordering appellants to remove the shop building because the court concluded the building was suited for commercial purposes. Appellants suggest that a more equitable and appropriate remedy would be to restrict their use of the structure. We do not reach appellant's second point on appeal because it does not appear to have been presented to the trial court. We have consistently held that we will not consider an issue for the first time on appeal. *Hercules Inc. v. Pledger*, 319 Ark. 702, 894 S.W.2d 576 (1995).

Affirmed.

NEWBERN, J., dissents.

DAVID NEWBERN, Justice, dissenting. The majority opinion points out correctly that the bill of assurances and the warranty deed prohibited commercial use of the Holadays' lot and use of any outbuilding as a residence. The presence of the metal building violated neither provision.

The Holadays argue the injunction should have been limited to prohibiting commercial activity on their lot. The majority opinion answers the point by saying it was not raised to the Chancellor and, therefore, it will not be considered.

The following are excerpts from the Holadays' abstract of the Chancellor's ruling from the bench:

> In this case it is a question of fact of whether the blue metal shop building is a commercial building or nothing more than an oversized garage. But maybe I could say that is a question of fact whether or not it violates the covenants. I guess if we argued that the building is ok if you do not use [it] for anything except to tinker with and you do not ever use [it] for anybody's benefit or sell your services. That would be the hardest question I would have to answer.
>
> ***
>
> Let's say that the Defendant [the Holadays] is going to use the building for his own private use. So, everybody in the neighborhood is entitled to one of those. The next thing you know somebody sells one of those lots with that building up there and the guy brings in the lawnmowers.

He can advertise in the paper because signs are prohibited on the property and pretty soon you have folks coming in with their lawnmowers.

The question whether the injunction should be limited to prohibition of commercial activity was before the Chancellor. His apparent conclusion was that a building which could be used for commercial purposes would necessarily be so used. Nothing in the evidence presented compels that conclusion; nor am I able to say it is demanded by logic.

While a chancellor has broad power to fashion a decree that is reasonable in the circumstances, the effect of a decree should be limited to the minimum necessary to solve the problem at hand. It must be limited to action which is "justified by the proof." *See Lotz* v. *Cromer,* 317 Ark. 250, 878 S.W.2d 367 (1994); *Chambers* v. *Manning,* 315 Ark. 369, 868 S.W.2d 64 (1993); *Keith* v. *Barrow-Hicks Extensions of Water Improvement Dist. No. 85,* 275 Ark. 28, 626 S.W.2d 951 (1982).

I respectfully dissent.