Dennis HOLMESLEY *v.* Chris WALK and Spouse,
Individually and as Trustee of the 1997
Walk Family Trust dated 11/19/1997

CA 00-518                                                        39 S.W.3d 463

Court of Appeals of Arkansas
Division I
Opinion delivered February 14, 2001

*Peel & Simmons, P.A.*, by: *Scott M. Simmons*, for appellant.

*Lorre Moore*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Dennis Holmesley appeals an order of the Johnson County Chancery Court that denied his request for a permanent injunction against appellees

Chris Walk and his spouse in the construction of a lake home in the Piney Bay Development of Knoxville, Arkansas. Appellant is the owner of Lot 32, and appellees are the owners of Lot 9. Lot 9 is a lakefront lot, and Lot 32 is an interior land lot situated directly across the street from Lot 9. A bill of assurance with protective covenants pertaining to the Piney Bay Development was filed of record in 1989, and it states in pertinent part that:

> No two (2) story dwelling shall be constructed on Lots 1-15 or on Lots 28 and 29 unless prior written approval as to the design, location and type structure of such two-story dwelling is granted by the existing lot owners or Grantor-Developer located on each side and the two (2) most closely located lots behind each of these proposed lots.

Appellees began construction of their residence on Lot 9 without obtaining any such consents, and appellant instituted this action on July 7, 1999, to halt construction of what appeared to appellant to be a two-story house. A temporary injunction was granted, but after a final hearing, a permanent injunction was denied by order entered on October 11, 1999. This appeal followed, and we reverse.

■ The standard of review in chancery cases is well settled. Though we review chancery cases de novo, we will not reverse unless the chancery decision is clearly against the preponderance of the evidence or clearly erroneous, giving due deference to the superior position of the chancellor to judge the credibility of the witnesses. *Riddick v. Street*, 313 Ark. 706, 858 S.W.2d 62 (1993); *Welchman v. Norman*, 311 Ark. 52, 841 S.W.2d 614 (1992). A decision is clearly erroneous when, although there is evidence in the record to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Simmons First Bank v. Bob Callahan Servs., Inc.*, 340 Ark. 692, 13 S.W.3d 570 (2000); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999).

■ Courts do not favor restrictions upon the use of land, and if there is a restriction on the use of land, it must be clearly apparent. *McGuire v. Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988). But, one taking title to land with notice that it is subject to an

agreement restricting its use will not, in equity and good conscience, be permitted to violate its terms. *Harbour v. Northwest Land Co.*, 284 Ark. 286, 681 S.W.2d 384 (1984). The general rule governing the interpretation, application, and enforcement of restrictive covenants is that the intention of the parties as shown by the covenant governs. *McGuire v. Bell, supra.* Where there is uncertainty in the language by which a grantor in a deed attempts to restrict the use of realty, freedom from that restraint should be decreed; but when the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed, and it is improper to inquire into the surrounding circumstances of the objects and purposes of the restriction to aid in its construction. *Hays v. Watson*, 250 Ark. 589, 466 S.W.2d 272 (1971). However, such strict rules of construction shall not be applied in such a way as to defeat the plain and obvious purpose of the restriction. *Id.*

The question on appeal can be distilled to this: Is appellees' dwelling under construction on Lot 9 a two-story structure or not? The chancellor determined that appellees' house did not qualify as a two-story building; consequently permission from those listed in the protective covenant was not required. Therefore, the chancellor denied the petition for a permanent injunction. Although there is evidence in the record to support this decision, we are left with a definite and firm conviction that a mistake has been committed. Therefore, we reverse.

The evidence adduced before the chancery court at the preliminary hearing was as follows. Appellant submitted color photographs of the Lot 9 construction, including Exhibit 4 appended to this opinion, demonstrating wood framing on the foundation and a staircase leading upward indicating two levels of living space. Also framed up at the top of the staircase were two bedrooms, a bathroom, and closet space. Appellant testified that neither Mr. Walk nor his wife obtained consent from him to construct a two-story house. Appellees' builder, Jimmy E. Oliver, testified that in his opinion, a two-story home has as much floor space on the second floor as the first floor, which this house did not. Oliver admitted knowledge of the subdivision restrictions but decided that this

building did not violate them. Oliver stated that the roof line of this house sits on the first floor, and he was simply utilizing the attic space. If the second floor were built without the added living space, the exterior of the house would not change, according to Oliver. In contrast, when addressing the upper space, the house plans undisputedly and repeatedly make reference to the "second floor."

At the conclusion of this preliminary hearing, the chancellor stated his findings that the intent of the restrictive covenants was to prevent any blockage of the view of the lake, that Mr. Oliver and the Walks were aware of the restrictive covenants, and that the injunction would continue until the final hearing on August 20, 1999.

Several witnesses were produced at the final hearing, the first of whom was Karen May, the owner of the corporation that developed Piney Bay Development. May affirmed that no one had asked her permission to construct the appellees' house. May considered appellant's lot to be "behind" Lot 9 because appellant's lot was on interior land. The builder, Mr. Oliver, testified that the second level of the house was 30 percent complete. Oliver also verified that the architectural plans described the house as having a first floor, second floor, and top plate of second floor, and that the plans referenced "second floor" five times. Oliver restated his opinion that a house only has a second story if the same square footage is on the second level as the first. Oliver described the living room as having a cathedral ceiling that reaches within three or four feet of the roof and the rest of the second floor as utilizing the remaining attic space. Oliver stated that as long as the levels going up decreased in square footage, then it would be permissible to "keep going up."

The assistant director of the Clarksville Housing Authority, Toby Wilson, was called to testify by appellees, and he opined that appellees' house was a one-story or one-and-one-half-story house. Wilson stated that this house would not be defined as a two-story house because the second story, "whether it be the same size or whatever, it is framed up and the roof line is put on that."

■ Maximum height restrictions have commonly been expressed in terms of "stories." 20 AM. JUR. 2d *Covenants, Etc.* § 229. In *Webster's Ninth New Collegiate Dictionary*, (1991), the word "story" as used in this context means "the space in a building between two adjacent floor levels or between a floor and the roof," or "a set of rooms in such a space." There is nothing vague, ambiguous, or uncertain in the meaning. *See, e.g., Dickstein v. Williams*, 93 Nev. 605, 571 P.2d 1169 (1977) (holding that there is nothing ambiguous in restrictive phrase "not exceeding one story from ground level"); *King v. Kugler*, 17 Cal. Rptr. 504, 197 Cal. App.2d 651 (1961) (holding that there is nothing ambiguous about restrictive phrase "one story in height").

■ Though the Walks introduced opinions of two persons in the construction field that favored their view of the definition, there was also the expert opinion of the architect whose drawings of the house repeatedly referenced the second floor of this house. Resort to differences in expert opinion was unnecessary, though, because "two story" is to be applied in its plain and unambiguous form. Both parties agree that the language of the protective covenant is unambiguous, as do we. The Walks' house had more than one "space in a building between two adjacent floor levels or between a floor and the·roof," or "a set of rooms in such a space." Attempting to avoid this clear restrictive covenant was impermissible, and we hold that the chancellor clearly erred in this case.

■ As to appellees' contention that it would be unfair and inequitable to require them to remove that portion of the house that violates the restrictive covenant at this late date, we disagree. Courts have commonly ordered removal of structures erected in violation of restrictive covenants. *See Holaday v. Fraker*, 323 Ark. 522, 915 S.W.2d 280 (1996); *McDonough v. W. W. Snow Constr. Co.*, 131 Vt. 436, 306 A.2d 119 (1973); *Hanson v. Hanly*, 62 Wash.2d 482, 383 P.2d 494 (1963). Parties who are fully aware of the restrictive covenants, as were these parties, and who choose to rely on a mistaken assumption that they were acting legally and properly, do so at their own risk. *See Smith v. Nelson*, 149 Colo. 200, 368 P.2d 566 (1962).

Reversed and remanded.

GRIFFEN and NEAL, JJ., agree.