

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-133

| | |
|---|---|
| BO D. BRIGGS, INDIVIDUALLY, AND D/B BRIGGS & ASSOCIATES, LLC<br><br>APPELLANTS<br><br>V.<br><br>MORGAN MAGNESS, JUDITH B. MAGNESS, GEORGE W. FOSTER III, JACK LONDON, KAREN LONDON, B. DOUGLAS STOKES, SARAH MOORE STOKES, MICHAEL ROBERSON, SARA ROBERSON, DIANNE WOOD, AND LINDA YOUNG<br><br>APPELLEES | Opinion Delivered: NOVEMBER 30, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. 60CV-15-3176]<br><br>HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE<br><br>AFFIRMED |

**KENNETH S. HIXSON, Judge**

This case involves the interpretation of restrictive covenants for a subdivision known as Belle Pointe Subdivision in Little Rock (the subdivision). The trial court ruled that restrictive covenants encumbering the subdivision prevented appellant D/B Briggs & Associates, LLC (Briggs) from accessing a new planned development through the subdivision. On appeal, Briggs contends that the trial court erred in failing to properly apply the "unfettered use" rule in construing the restrictive covenants applicable to the subdivision. We affirm.

In 1989, Darbe Development Company (Darbe) developed Belle Pointe Subdivision (the subdivision). The subdivision can be generally described as a one-street subdivision lying in a north-south orientation with a cul-de-sac at each end. Belle Pointe Drive

connects the two cul-de-sacs with numbered residential lots on either side of the drive. This litigation pertains to the cul-de-sac at the north end. Adjacent to, and north of, this cul-de-sac is a 40-acre tract of undeveloped land, which is the land that Briggs intends to use to build his new development. Lot 25 of the subdivision lies on the left side (west) of the cul-de-sac, and Lot 26 lies to the right side (east) of the cul-de-sac. Lot 25 and Lot 26 do not have a common border. Instead, between Lots 25 and 26 is a triangular area of land styled "Tract A." Briggs desires to build a street or driveway from the cul-de-sac through Tract A to gain access to his new 40-acre development. The appellees,[1] various owners of lots within the subdivision, do not want the cul-de-sac opened up to the new development.

Melvyn Bell, Darbe's principal shareholder, owned the forty acres lying north and contiguous to Tract A. When Darbe created the subdivision, Darbe filed a bill of assurance (the original bill of assurance) and a plat (the original plat) of the subdivision. The original bill of assurance for the subdivision provided, in relevant part:

> [Darbe] has donated and dedicated to the public no right-of-way for streets, but does hereby provide for *an easement* as a common drive for Belle Pointe, within the area shown on the Plat, as access, drainage and utilities, to be used *for ingress, egress and regress only by the owners of the lots 1-32, Tract 'A' and Tract 'B' and the 40 acres, [description omitted], lying North of and contiguous to Tract 'A'* and Lots 24 and 25, their agents, licensees, family, guests, invitees and for fire, police, postal and related services.

(emphasis added). The original bill of assurance also provided that "[t]he land herein platted shall be held, owned and used only as residential building sites. *Tract 'A' shall remain open space until combined with other land to make a buildable residential lot with the approval of the Little*

---

[1]Morgan Magness, Judith B. Magness, George W. Foster III, Jack London, Karen London, B. Douglas Stokes, Sarah Moore Stokes, Michael Roberson, Sara Roberson, Dianne Wood, and Linda Young.

*Rock Planning Commission.*" (emphasis added). Tract A was shown on the original plat as being located between residential lots 25 and 26 and overlapping part of the cul–de–sac at the north end of the subdivision.

The subdivision was replatted (the replat) in 1993 by a property owners' improvement district owning more than seventy-five percent of the property within the subdivision. The replatting was designed to create more lots over the same area, resulting in eight additional lots.[2] Along with the replat, the improvement district created and filed an amended and restated bill of assurance (the restated bill of assurance) for the subdivision. In relevant part, the restated bill of assurance provided:

> The undersigned hereby donates and dedicates to the public an easement of way on, over and under the streets owned by the undersigned as shown on the Plat to be used as public streets as well as any landscaped areas.
>
> . . . .
>
> The Original Bill of Assurance made no dedication or donation to the public of right-of-way for streets, but said Original Bill of Assurance and Original Plat did provide for certain easements for a common drive, access, drainage and utilities *as shown on the Original Plat.* To the extent not hereby dedicated to public use, the undersigned reaffirms such easements as shown on the Original Plat and nothing herein shall be deemed to amend or revoke the prior grant of said easements.

(emphasis added). In addition, the restated bill of assurance again provided that "*Tract A shall remain open space until combined with other land to make a buildable residential lot with the approval of the Little Rock Planning Commission.*" (emphasis added).

Briggs entered into a contract to purchase Tract A of the subdivision and the contiguous forty acres north of Tract A with the intention of creating Belle Pointe View

---

[2]Lot 25 became Lot 30R, and Lot 26 became Lot 31R. The configuration of Tract A appeared to be unchanged.

SLIP OPINION

Estates (BPVE) subdivision. In the proposed plat for BPVE, Briggs combined a portion of the forty acres of undeveloped land along with Tract A of Belle Pointe to create a new proposed buildable residential lot. And, more importantly, the proposed plat showed that Tract A would be used for a street or driveway for access to BPVE from the Belle Pointe Subdivision.

On July 14, 2015, appellees, as property owners on the subdivision, filed an action for declaratory judgment. They contended that Briggs's plan to construct a street or driveway across Tract A violated the restated bill of assurance providing that Tract A would remain open space until combined with other land to make a buildable residential lot.

Briggs answered and counterclaimed, contending that it intended to build a gated, private drive and that the Belle Pointe subdivision restrictions did not prohibit Tract A from being used for a private drive. Briggs requested injunctive relief to enjoin appellees from interfering with its development of Tract A for that purpose. Briggs subsequently filed a motion for summary judgment. The appellees filed a response to Briggs's summary-judgment motion and a countermotion for summary judgment.

The trial court conducted a hearing on the pending cross-motions for summary judgment. At the conclusion of the hearing, the trial court announced that it would grant the appellees' motion for summary judgment, thereby prohibiting Briggs from using Tract A as an access drive to its new proposed subdivision. The order memorializing the trial court's findings and ruling was entered on November 5, 2015, and that order recites in relevant part:

> 3. The sole issue to be decided by this court was whether Defendant is prohibited by the restrictive covenants of Belle Pointe Subdivision to use Tract A to

SLIP OPINION

construct a private drive to access Briggs's proposed subdivision adjoining Tract A of Belle Pointe Subdivision.

    4. The parties agree that the Court, in construing restrictive covenants, must do so by applying the "strict construction" test so that "all doubts are resolved in favor of the unfettered use of land." *Royal Oaks Vista, LLC v. Maddox*, 372 Ark. 119, 271 S.W.3d 479 (2008).

    5. In applying the above standards for construction for Bills of Assurance, the Court finds that the operative document is the 1993 Restated and Amended Bill of Assurance that says Tract A shall remain open space and it will combine other land and make a buildable residential lot with the approval of the Little Rock Planning Commission. The Court finds that language amends the original Bill of Assurance and is very specific that there was going to be a building with land combined to Tract A and the Little Rock Planning Commission was required to approve it.

    6. Accordingly, the Court GRANTS Plaintiffs' Motion for Summary Judgment to declare that Tract A may only be combined with other areas outside Belle Pointe Subdivision to make a single residential lot.

On appeal, Briggs contends that the trial court erred by imposing a restriction on Tract A that was not clearly apparent from the bills of assurance. Briggs further asserts that the trial court erred by failing to construe both the original bill of assurance and the restated bill of assurance together in arriving at its decision.

Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Abraham v. Beck*, 2015 Ark. 80, 456 S.W.3d 744. However, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as they did in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.* As to issues of law presented, our review is de novo. *Id.*

At issue in this case is the interpretation of a protective or restrictive covenant on the use of land. Our courts have observed that restrictions on the use of land are not favored

SLIP OPINION

in the law. *Royal Oaks Vista, L.L.C. v. Maddox*, 372 Ark. 119, 271 S.W.3d 479 (2008).

Further, a restrictive covenant will be strictly construed against limitations on the free use

of land. *Id.* Thus, all doubts are resolved in favor of the unfettered use of land. *Id.* In

addition, the supreme court has stated that the general rule of interpretation, application,

and enforcement of restrictive covenants is that the intention of the parties as shown by the

covenant governs. *Cochran v. Bentley*, 369 Ark. 159, 251 S.W.3d 253 (2007). Any

restriction on the use of land must be clearly apparent in the language of the asserted

covenant. *Id.* Where the language is clear and unambiguous, the parties will be confined

to the meaning of the language employed, so long as the meaning does not defeat the plain

and obvious purpose of the provision. *Windsong Enters., Inc. v. Upton*, 366 Ark. 23, 233

S.W.3d 145 (2006). The rule of strict construction is limited by the basic doctrine of taking

the plain meaning of the language employed. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d

4 (1996).

Briggs argues that the application of the "unfettered use" rule, as outlined above,

allows it to use Tract A to access its adjacent BPVE development and that the trial court

erred in deciding otherwise. However, applying the principles above to the restrictive

covenants at issue here, we disagree.

In arguing that the restrictive covenants prohibited Briggs's intended use of Tract A,

the appellees rely on our decision in *Briarwood Apartments v. Lieblong*, 12 Ark. App. 94, 671

S.W.2d 207 (1984). There, we held that a restrictive covenant providing that "no lot shall

be used except for residential purposes" was violated by the appellant's intended use of one

of the subdivision lots to access its apartment complex, which was not part of the

subdivision. We indicated that such a restrictive covenant permitted only uses that were reasonably incidental to residential uses. We concluded in *Briarwood Apartments* that the use of the appellant's lot as a connecting street to access the adjoining apartment complex was not in any sense a residential use or a use incidental thereto.

In the case at bar, the trial court determined that Briggs's intended use of Tract A as access to a separate subdivision was inconsistent with the use of Tract A as stated in the restated bill of assurance. More particularly, the restated bill of assurance provided that Tract A shall remain open space until combined with other land to make a buildable residential lot with the approval of the Little Rock Planning Commission. The restated bill of assurance further provided that "[no] structures or other improvements shall be erected, altered, placed or permitted to remain on any building site other than a single detached single-family residence and the appurtenance thereunto such as a driveway, sidewalks, and fences[.]" Although Briggs argues that the restriction on Tract A as found by the trial court was not clearly apparent, we agree with the trial court that the language employed in the restated bill of assurance evinced a clear intent to limit Tract A to a single residential use. Because a roadway as access to other property is inconsistent with such residential use, the trial court's interpretation of the restrictive covenants was correct. *See Briarwood Apartments*, *supra*.

Briggs, however, argues that the original bill of assurance was incorporated by reference into the restated bill of assurance, and that the original bill of assurance granted an easement across Tract A to access the 40-acre tract to the north, which allows for the common drive that Briggs proposes to develop. Briggs relies on the language in the original

bill of assurance providing for an easement for ingress and egress to the property owners within the subdivision, and also to Tract A and the 40 acres lying north and contiguous to Tract A.

Assuming *arguendo* that the restated bill of assurance did incorporate by reference the original bill of assurance, the restated bill of assurance terminated any easement across Tract A, if one in fact existed. The person asserting an easement has the burden of proving the existence of the easement. *Riffle v. Worthen*, 327 Ark. 470, 939 S.W.2d 294 (1997). An express grant of an easement must be clearly and unmistakably communicated by the clear intention of the grantor. 25 Am. Jur. 2d *Easements and Licenses* § 14 (2016). Moreover, the grant should identify the easement's location with specificity. *Wilson v. Johnston*, 66 Ark. App. 193, 990 S.W.2d 554 (1999).

We observe that the original bill of assurance contains inconsistent provisions as to whether there was an intention to create an easement over Tract A to the contiguous 40-acre tract. The provision relied on by Briggs to assert such easement specifically describes the easement as being "within the area shown on the plat." However, the original plat depicts the easement ending at the cul-de-sac; the easement as shown on the plat does not extend across Tract A to the undeveloped 40-acre tract. Furthermore, the original bill of assurance contains conflicting language providing that Tract A shall remain open space until combined with other land to make a buildable residential lot with the approval of the Little Rock Planning Commission, and this provision would be inconsistent with a public street.

Even if we were to determine that the intent of the original bill of assurance was to create an express easement across Tract A, we conclude that the easement was subsequently

terminated. An easement can terminate either by expiring in accordance with the intent of the parties manifested in the creating transaction, or by being extinguished by the course of events subsequent to its creation. *See Sluyter v. Hale Fireworks P'ship*, 370 Ark. 511, 262 S.W.3d 154 (2007). In this case, the express terms of the restated bill of assurance terminated any claim to an easement over Tract A.

The operative language in the restated bill of assurance is as follows:

> The Original Bill of Assurance made no dedication or donation to the public of right-of-way for streets, but said Original Bill of Assurance and Original Plat did provide for certain easements for a common drive, access, drainage and utilities as shown on the Original Plat. To the extent not hereby dedicated to public use, the undersigned reaffirms such easements *as shown on the Original Plat* and nothing herein shall be deemed to amend or revoke the prior grant of said easements.

(emphasis added). The original plat does not show an easement across Tract A to the contiguous 40-acre tract to the north, nor does the restated plat, so by the express terms as restated in the restated bill of assurance, no such easement exists.

We hold that the trial court's application of the "unfettered use" rule to these restrictive covenants was not erroneous. Because the restated bill of assurance contains restrictions preventing Briggs's intended use of Tract A, and there is no existing easement to otherwise allow for access across Tract A, we affirm the trial court's summary judgment entered against Briggs and in favor of the appellee landowners.

Affirmed.

GLADWIN, C.J., and KINARD, J., agree.

*Friday, Eldredge & Clark, LLP*, by: *Bruce B. Tidwell*, for appellants.

*Marian M. McMullan*, for appellees.