STUTTGART ELECTRIC CO., INC.*v.* RICELAND SEED COMPANY, d/b/a Stratton Seed Company

CA 90-184                                        802 S.W.2d 484

Court of Appeals of Arkansas
Division I
Opinion delivered January 30, 1991

*Dennis R. Molock*, for appellant.

*Green & Henry*, by: *J.W. Green*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a decision of the Arkansas County Chancery Court denying appellant's request for a mandatory injunction to require appellee to remove a portion of a warehouse which encroaches onto appellant's property by up to 2.3 feet. After trial on the merits, the chancellor issued a letter opinion which set out his findings and conclusions as follows:

> 1. The encroachment by the building is slight and was not done intentionally.
>
> 2. Due to its angle, the building line intersects with the actual property line. This could leave the [appellant] with approximately as much land as the building took.
>
> 3. Removal of the building would be a harsh, drastic and totally inequitable remedy.
>
> 4. The boundary line should be changed to follow the building line. The [appellant] and his successors will be awarded an easement in perpetuity over the land gained and the [appellee] likewise granted an easement in perpetuity over the land gained.
>
> 5. The [appellant] should be awarded $1,000.00 in compensatory damages and an attorneys fee for $750.00 plus costs.

Appellant appeals from the judgment entered upon the above findings and conclusions and contends the chancellor erred in refusing to order the encroachment removed and that the remedy fashioned by the chancellor is both contrary to law and insufficient.

There is evidence that in 1985 appellant sold appellee the south 25 feet of a lot adjoining appellee's property, and appellee built a metal warehouse building upon that property and additional property to the south which appellee already owned. No survey was performed before the warehouse was built, but a survey conducted about three years after construction revealed

that the north side of the building crosses the common east-west property line at about the midpoint of the building and at the east end encroaches 2.3 feet upon the appellant's property.

At the time the structure was built, neither party was aware of the encroachment. In the process of adding another building to its property in 1988, the appellee discovered the encroachment of the 1985 building and notified the appellant of this fact. Appellant then had its own survey made, and in early 1989 wrote appellee that there were three ways the appellee could settle the problem: (1) remove the building, (2) buy the remaining portion of the vacant lot on which appellee's building encroached (this would be the north 19.3 feet of the lot from which appellant had sold the south 25 feet to appellee), or (3) buy only the strip of land upon which appellee's building encroached. However, the appellant made it clear the third option was not acceptable. No settlement was reached and this suit was filed on June 1, 1989.

The president of the appellant company testified that he had offered to sell the remaining portion of this vacant lot to other parties before he offered it to appellee. He said his company really did not need the property, but he was not trying to force the appellee to buy it. He said the property had been offered for sale in 1986 and in 1987. He also admitted that he did not know whether the fact that the appellee's building encroached on the lot had affected its price; that the asking price had not come down since he learned of the encroachment; and that he would have been willing to accept the north edge of the appellee's building as the property line if he had not been told of the encroachment.

It was also admitted by both parties that the appellee had constructed an underground drainage pipe along the north wall of its building; that this also encroached upon appellant's property; and that it was constructed at appellant's suggestion (but at a time when appellant did not know the building encroached upon appellant's land). The president of the appellee corporation testified that it would cost $10,000.00 to remove its building from the portion of appellant's land upon which the building en-·croached. There is no evidence in the record as to the value of the building although there is an exhibit which shows the building is 101 feet wide and 124.6 feet long.

The appellant cites our case of *Smith v. Stewart*, 10 Ark.

App. 201, 662 S.W.2d 202 (1983), where we reversed the chancellor's refusal to grant a mandatory injunction requiring the appellees to remove a house which they constructed by mistake on the appellant's land. In that case, we said:

> In their arguments on appeal, appellees recognize the established line of cases wherein Arkansas courts have issued or directed mandatory injunctions requiring the removal of improvements placed upon the land of another. *Dendy* v. *Greater Damascus Baptist Church*, 247 Ark. 6, 444 S.W.2d 71 (1969) (a small church was mistakenly built upon adjoining landowner's unfenced, wooded acre); *McLendon* v. *Johnston*, 243 Ark. 218, 419 S.W.2d 309 (1967) (a newly constructed house encroached a distance of 3.4 feet onto the adjoining landowner's property); *Beaty* v. *Gordon*, 236 Ark. 50, 364 S.W.2d 311 (1963) (the eaves of a newly built house extended over the property line of the adjoining landowner); *Fulks* v. *Fredeman*, 224 Ark. 413, 273 S.W.2d 528 (1954) (a brick wall leaned over adjoining landowner's property line); and *Leffingwell* v. *Glendenning*, 218 Ark. 767, 238 S.W.2d 942 (1951) (a stone and cement wall encroached upon a twenty-six foot strip owned by the adjoining landowner). Appellees argue these prior cases are factually distinguishable from the situation presented herein because the removal of appellees' house would destroy it; they contend the application of the rule requiring the removal of the house as an encroachment is too harsh and inequitable. In support of appellees' position, they cite two Michigan Supreme Court cases, *Hardy* v. *Burroughs*, 251 Mich. 578, 232 N.W. 200 (1930), and *Rzeppa* v. *Seymour*, 230 Mich. 439, 203 N.W. 62 (1925). The simple answer to appellees' argument is that the rule applied by the Arkansas Supreme Court in such encroachment matters differs from the more lenient rule adopted by the Michigan court.

10 Ark. App. at 203.

In the instant case, the appellee points to the final paragraph of the decision in *Leffingwell* v. *Glendenning* (the basic precedent cited in the above quotation), which states:

> The decree in the instant case reserved to appellant his

property right in the land onto which the wall curved, hence the statute of limitation would not run. There is ample evidence of a sincere desire on the chancellor's part to reach an equitable result without permitting the encroachment to take permanently from appellant the three or four inches of land occupied by the wall. However, a majority of the court take the view that the cost to appellees of removal is not disproportionate to the value appellant appears to place on the land, and for that reason they think it was error not to issue the injunction, restricted to the 26-ft. strip described in the decree.

Appellee also cites 43A C.J.S. *Injunctions* § 81 (1978), where it is stated:

A mandatory injunction to compel the removal of buildings or other structures wrongfully placed on the land of another will not be granted when it will operate inequitably or oppressively, or where the encroachment is trifling and the result of an innocent mistake and the damage caused to defendant by removal would be greatly disproportionate to the interest which plaintiff claims.

And the appellee cites *Hamilton* v. *Smith*, 212 Ark. 893, 208 S.W.2d 425 (1948), where the trial court refused to grant an injunction requiring the appellees to remove a building which they constructed on land over which the appellant had an easement. The trial court found the appellant was estopped by his delay in seeking relief and the appellate court affirmed saying "equity will lend its aid only to those who are vigilant in asserting their rights." Appellee also cites *Richards* v. *Ferguson*, 252 Ark. 484, 479 S.W.2d 852 (1972), where the chancellor held a city ordinance, which rezoned some property for apartment and quiet-business use, to be arbitrary and capricious. The Arkansas Supreme Court reversed on the grounds that the appellees had waited until the appellant had purchased the property, incurred substantial other expense, and was ready to build on the property before they brought the suit to invalidate the ordinance. The court said:

No excuse for their protracted delay is offered. In the circumstances a court of equity must hold that they have slept upon their rights for such an unreasonable length of

time that they are precluded from obtaining affirmative relief.

252 Ark. at 487.

The issue of encroaching structures is discussed in Dobbs, *Handbook on the Law of Remedies* § 5.6 at 355-56 (1973), where it is said:

> In such cases the approach is to balance several factors—the relative hardship to the parties and the equities between them—and to grant or deny the injunction as the balance may seem to indicate. In balancing the hardships and equities, courts are guided by two central considerations. First, no one should be permitted to take land of another merely because he is willing to pay for it. This would amount to a private eminent domain. No one should be permitted to accomplish this indirectly, by intentionally trespassing with the hope that an injunction would be denied and he would be permitted to remain on the land. The second consideration moves in the opposite direction. Though private eminent domain cannot be sanctioned, neither can extortion, and if an injunction is issued to protect an insignificant strip of the plaintiff's land at the expense to the defendant of tearing down a large building, one may expect the plaintiff, having procured the injunction, to "compromise" for an extortionate figure.... These two policy considerations have usually led to the view that if the defendant intentionally or recklessly builds his structure partly on the plaintiff's land, he will be compelled by injunction to remove it to avoid what otherwise would amount to a right of private eminent domain. Even if he is not wilful or intentional, but only negligent, this will weigh as one factor against him and in favor of an injunction. On the other hand, if the defendant has acted in good faith most courts will proceed to consider other factors, such as the hardship to the defendant if removal is compelled. If the hardship likely to result to the defendant if the injunction is granted seems great in comparison to the hardship likely to result to the plaintiff if it is denied, no injunction issues, and the structure is allowed to remain, subject to payment of damages.

■ We think the law, as indicated by the authorities discussed above, holds that the right to an injunction requiring the removal of encroaching buildings upon the property of others is governed by equitable principles. In *Smith* v. *Stewart, supra,* this court reversed the trial judge who refused to grant a mandatory injunction requiring the removal of a house constructed upon the land of another. Our opinion said the trial judge found that the owners of the property "were not negligent in looking after their property or in failing to warn appellees against starting—or stopping—the construction of the house." But the opinion also states that the trial court found that "*while they may have been careless to some extent*, appellees built the house in good faith." (Emphasis added.) Thus, our decision was not based solely on a rule of law, but indicates concern with a "balancing of the equities." The Arkansas cases of *Leffingwell* v. *Glendenning, Hamilton* v. *Smith,* and *Richards* v. *Ferguson, supra*, took the same approach. This is also the approach taken by the Restatement of Torts where it is stated:

> Elementary justice requires consideration of the hardship the defendant would be caused by an injunction as compared with the hardship the plaintiff would suffer if the injunction should be refused. Though the expression "balance of convenience" is sometimes used to designate the weighing process here involved, it does not state the proper test. This term suggests a nice measurement of relative advantages and a denial of the injunction if the scales tip in the defendant's favor. The law does not grant an injunction merely because of the advantage that the plaintiff might reap from it, and it does not refuse an injunction merely because of the convenience that the refusal might afford the defendant. The problem is more complex than that. It cannot be summed up in any phrase less elastic than "relative hardship."

> In its broader aspects, the problem may be viewed as one of balancing all of the equities of the situation. This process first involves consideration of the relative hardships of the two parties; but it extends beyond hardships to other factors, such as the character of the conduct (including the respective motives) of the defendant and the plaintiff that produced the situation and created the

attendant hardships.

Restatement (Second) of Torts § 941 (1977).

■ In our review of cases tried without a jury, we do not set aside findings of fact unless clearly erroneous (clearly against the preponderance of the evidence), and we must give due regard to the opportunity of the trial judge to judge the credibility of the witnesses. Ark. R. Civ. P. 52(a). Here, the trial judge found the encroachment by the appellee's building was slight and not done intentionally. He also found that due to its angle, the building intersects the property line in such a manner that the appellant could be left with approximately as much land as the building took. (This means, when applied to the evidence, that neither party loses any land.) Considering these findings by the court and the evidence that it would cost $10,000.00 to remove the building from appellant's land; that the building only encroaches upon appellant's land by a maximum of 2.3 feet at one end; that the amount of land left to appellant is approximately the same that was left after appellant sold a portion of the lot to appellee; that the appellant's asking price for the land left was the same after it learned of the encroachment as it was before; and that the building had been constructed for three years before either party (both of whom were acting in good faith) became aware of the encroachment, we cannot say it was clearly erroneous (or clearly against the preponderance of the evidence) for the trial court to find that "removal of the building would be a harsh, drastic and totally inequitable remedy."

■ We, therefore, affirm the above ruling of the trial court. However, we do not believe the court should have granted each party an easement over the property of the other. Dobbs, in his book on the *Law of Remedies, supra*, points out that neither private eminent domain nor extortion can be sanctioned. It seems to us that the proper decision in this case is to simply deny the appellant's petition for a mandatory injunction and award it any proper damages sustained. This was the procedure followed in *Hamilton* v. *Smith, supra*, except in that case there was no adjudication of damages and the opinion stated that the decree denying the injunction "should not bar an action" for damages. *See also Cammers* v. *Marion Cablevision*, 26 Ill. App. 3d 176, 325 N.E.2d 62 (1975) (cited in support of our above quotation

116

from 43A C.J.S. *Injunctions* § 81). In the present case, the court awarded damages and attorney's fee. Neither party questions that award in this appeal.

We affirm the trial court's denial of appellant's request for a mandatory injunction and affirm the award of $1,000.00 compensatory damages, $750.00 attorney's fee, and $59.95 trial court cost. We reverse the trial court's award of an easement in perpetuity to each party. Each party shall pay its own cost of appeal.

Affirmed as modified.

CRACRAFT and ROGERS, JJ., agree.