Gerald BARBER et al. *v.* Mike WATSON

97-77                                   953 S.W.2d 579

Supreme Court of Arkansas
Opinion delivered October 16, 1997

*Mixon & McCauley, P.A.*, by: *Donn Mixon*, for appellants.

*Mooney Law Firm*, by: *Charles M. Mooney, Sr.*, for appellee.

DONALD L. CORBIN, Justice. Appellants, some seventy residents of two subdivisions in Jonesboro, appeal the judgment of the Craighead County Chancery Court, Western District, denying their request for an injunction to prevent Appellee Mike Watson from constructing multi-family dwellings in one of the subdivisions. Appellants raise three points on appeal, which require us to construe a deed and bills of assurance; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(16). We find no error and affirm.

We can discern the following information from the abstract provided. Appellants are owners and residents of thirty-six and one-half lots in Meadow Lark Acres Subdivision ("Meadow Lark") and twelve lots in Meadow Lark Acres Extended Subdivision ("Meadow Lark Extended"), which are contiguous subdivisions comprised of fifty-two lots and twenty lots, respectively. Appellee is the owner of Lots 1, 2, 3, and 4 of Block H in Meadow Lark Extended. Meadow Lark was established and a bill of assurance was executed on November 15, 1967. Meadow Lark Extended was established and a bill of assurance was executed on November 18, 1968. The original bill of assurance for Meadow

Lark Extended prohibited the construction of any building other than single-family dwellings except on certain lots, including the four lots owned by Appellee. On those excepted lots, the bill of assurance provided that apartments may be constructed with the approval of the developers. An amended bill of assurance for Meadow Lark Extended was executed on August 18, 1995, prohibiting any construction of apartment buildings in Meadow Lark Extended. The amended bill of assurance was signed by owners of lots in both subdivisions.

Appellants filed this suit seeking an injunction from the chancery court prohibiting Appellee's planned construction of two additional apartment units on an already existing fourplex situated on one of his lots in Meadow Lark Extended. Appellants claimed that the area was not equipped to handle the increased traffic, that Appellee's plan violated all the bills of assurance, and that the use of the land for apartments would materially and substantially lessen the use and enjoyment of Appellants' property, thus constituting a nuisance.

Appellee filed a motion to dismiss the complaint on the grounds that some of the plaintiffs lacked standing to bring the action because they did not live in or own property in Meadow Lark Extended, and that pursuant to ARCP Rule 12(b)(6), the complaint failed to state facts upon which relief could be granted. A hearing was conducted on the matter on July 9, 1996. A letter order was subsequently entered by the chancellor granting Appellee's motion to dismiss. On the issue of standing, the chancellor agreed with Appellee that those plaintiffs who lived in or owned property in Meadow Lark had no standing to challenge any proposed construction in Meadow Lark Extended. The chancellor did find, however, that the amended bill of assurance had been signed by a majority of the lot owners of Meadow Lark Extended. Notwithstanding that finding, the chancellor concluded that the amended bill of assurance was not valid because it had not been timely executed in accordance with the procedure set out in the original bill of assurance. Appellants now assert that the chancellor's findings and conclusions were erroneous. We disagree.

■ We try chancery cases *de novo* on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996). In order to demonstrate that the chancellor's ruling was erroneous, Appellants must show that the trial court abused its discretion by making a judgment call that was arbitrary or groundless. *Id.*

For the first point for reversal, Appellants assert that the trial court erred in finding that the amended bill of assurance was not timely executed. In order for us to determine whether the chancellor correctly interpreted the provisions of the original bill of assurance, we must consider the language of the document. The pertinent provisions, as abstracted, read:

> We, W.R. Kitterman and Esther Lea Kitterman, his wife, Alton D. Holmes and Maralyn Holmes, his wife, and B. Frank Hyneman and Marzee Ann Hyneman, his wife, are the owners of the property that we plat and designate as Meadow Lark Acres Extended Subdivision to Craighead County, Arkansas. No lots shall be used except for residential purposes and no building shall be erected other than a single-family dwelling except that a duplex dwelling may be permitted under certain restrictions and apartment buildings shall be permitted on Lots 1, 2, 3, and 4 of Block H of the subdivision, and certain other lots, with the approval of the developers herein. The covenants and the restrictions of the Bill of Assurance shall be binding for a period of 25 years from the date of recording, after which time the covenants and restrictions shall be automatically extended for successive periods of ten years unless an instrument signed by a majority of the owners has been recorded agreeing to change or to terminate the covenants and restrictions.

The twenty-five-year period provided in the original bill of assurance would have expired in November 1993. The amended bill of assurance was not executed until August 18, 1995. The chancellor concluded that because Appellants had not executed the amended bill of assurance prior to the time the original bill of assurance had expired, the provisions of the original bill of assurance were automatically extended for an additional ten years. The chancellor determined that the proper way to amend or terminate the original bill of assurance was for a majority of the owners to agree and then file the agreement of record to take effect at the

time the original bill of assurance expired. Because the amended bill of assurance was not timely filed, the chancellor reasoned, the original bill of assurance, which allowed apartments on certain lots with the developers' approval, was still in effect at the time Appellants filed their complaint. We conclude the chancellor's interpretation was correct.

■ Courts do not favor restrictions upon the use of land; if such restrictions exist, they must be clearly apparent. *Holaday*, 323 Ark. 522, 920 S.W.2d 4; *McGuire v. Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988). The general rule governing the interpretation, application, and enforcement of restrictive covenants is the intention of the parties as shown by the covenant. *Holaday*, 323 Ark. 522, 920 S.W.2d 4. Where, however, the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed, so long as the meaning does not defeat the plain and obvious purpose of the restriction. *Id.* (citing *Hays v. Watson*, 250 Ark. 589, 466 S.W.2d 272 (1971)). Where no general plan of development exists, restrictive covenants contained in a bill of assurance are not enforceable. *McGuire*, 297 Ark. 282, 761 S.W.2d 904. Appellants do not challenge that a general plan of development existed in the subdivisions.

In *White v. Lewis*, 253 Ark. 476, 487 S.W.2d 615 (1972), this court was asked to interpret the amendment procedures set out in a bill of assurance very similar to the one in the present case. There, the bill of assurance provided in part:

> These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from the date these covenants are recorded, after which said covenants shall be automatically extended for successive periods of 10 years unless an instrument signed by a majority of the owners of the lots has been recorded, agreeing to change said covenants in whole or in part.

*Id.* at 478, 487 S.W.2d at 616. The appellants had filed an agreement to alter part of the bill of assurance, but the twenty-five-year period had not yet expired. The appellants argued that the language contained in the original bill of assurance pertaining to

amendments or alterations of the bill was uncertain. This court disagreed, holding:

> When the recited provisions of the bill of assurance are read *in toto* we think the restriction and the provisions for waiver are unambiguous. In simple terms it is provided that the covenants shall be binding for a period of twenty-five years from date of recordation, *after which* they are automatically extended for successive periods of ten years, unless an instrument signed by a majority of the property owners is filed agreeing to a change in whole or in part.

*Id.* at 478, 487 S.W.2d at 616.

Here, we conclude that the language in the original bill of assurance for the Meadow Lark Extended subdivision was likewise clear and unambiguous. We conclude further that giving the language of the document its plain meaning does not defeat the plain and obvious purpose of the restrictions. Accordingly, we agree with the chancellor's determination that Appellants should have had the agreement, signed by a majority of the owners, filed of record before the expiration of the twenty-five-year period, reflecting that the amendment was to take effect as of the day of the original bill's expiration. That was not done in this case; hence, the amended bill of assurance was not valid.

For the second point for reversal, Appellants argue that the trial court erred in refusing to find that Appellee's proposed plan to add two units onto an already existing fourplex located on Lot 2 was prohibited by the original bill of assurance for Meadow Lark Extended. Appellants contend that although the bill of assurance provided that apartments are permitted on Lot 2, they are only permitted with the approval of all of the developers. Appellants contend that Appellee only secured the approval of Esther Lea Kitterman, signing on behalf of herself and her husband W.R. Kitterman, and failed to obtain the approval of the other developers. We do not reach the merits of this argument because it is not clear from the abstract that Appellants made this particular argument below or that the trial court ruled on the issue in its order.

Where the abstract does not reflect that the argument, or any similar argument, was made in the trial court, we will not

reach the merits of the argument on appeal. *Betts v. Betts,* 326 Ark. 544, 932 S.W.2d 336 (1996); *Douthitt v. Douthitt,* 326 Ark. 372, 930 S.W.2d 371 (1996). Nor will we turn to the record to decide such an issue. *Reeves v. Hinkle,* 326 Ark. 724, 934 S.W.2d 216 (1996). "It is critical that this court not be placed in a position of considering an issue for the first time on appeal." *Id.* at 727-28, 934 S.W.2d at 218. Here, the abstract reflects only that Appellants asserted in their amended complaint that "Mr. Watson's proposed construction violates all the Bills of Assurance[.]" There is no further indication in the abstract that Appellants made anything other than this vague assertion that Appellee's proposed plans violated the original bill of assurance. The abstract does not contain any argument by counsel on this point, nor does it demonstrate that the issue was addressed by the chancellor either during the hearing or in the order.

▮ For the final point for reversal, Appellants argue that the chancellor erred in refusing to admit into evidence a plat of the Meadow Lark subdivision. As with the previous point, we do not reach the merits of this argument because Appellants have failed to abstract the specific arguments made by them in support of the exhibit's admission. The abstract only reveals that Appellants offered the exhibit, that Appellee objected to its relevance, and that the trial court sustained the objection. Without the benefit of knowing Appellants' reasons for offering the exhibit, it is practically impossible for us to determine whether the trial court abused its discretion in denying its admission. Even though our review of this appeal is *de novo,* it is nonetheless limited to the record as abstracted. *See Clardy v. Williams,* 319 Ark. 275, 890 S.W.2d 276 (1995). Where the abstract fails to show the specific arguments made regarding the proffered evidence, we will not consider the argument on appeal. *See Newton v. Chambliss,* 316 Ark. 334, 871 S.W.2d 587 (1994).

Affirmed.