## The CLIFFORD FAMILY LIMITED LIABILITY COMPANY, a Kansas Corporation, Mike D. Clifford, President and General Manager *v.* Donald COX and Lucille M. Cox, Husband & Wife

98-283                                                971 S.W.2d 769

Supreme Court of Arkansas
Opinion delivered July 9, 1998

[Petition for rehearing denied September 10, 1998.*]

---

* CORBIN, J., would grant.

Matthews, Campbell, Rhoads, McClure & Thompson, P.A., by: Edwin N. McClure, for appellants.

Hyden, Miron & Foster, PLLC, by: James W. Hyden, for appellees.

W.H. "DUB" ARNOLD, Chief Justice. This appeal involves protective covenants and arises from an order of the Benton County Chancery Court denying the request of the appellant, the Clifford Family Limited Liability Company, through Mike D. Clifford, the company's president and general manager ("the Cliffords"), for injunctive relief. The Cliffords assert that the chancellor erred in refusing to require appellees Donald Cox and Lucille M. Cox ("the Coxes") to remove a deck that they constructed on their property. The Arkansas Court of Appeals affirmed the chancellor's decision based on the authority of Stuttgart Electric v. Riceland Seed, 33 Ark. App. 108, 802 S.W.2d 484 (1991). Clifford Family Liability Company v. Cox, CA97-516 (Ark. Ct. App. Feb. 11, 1998). We granted review of that decision pursuant to Ark. Sup. Ct. R. 1-2(f), and consider this case as though it were originally filed in this court. Thompson v. State, 333 Ark. 92, 96, 966 S.W.2d 901 (1998). For the reasons set forth below, we reverse and remand the chancellor's decision.

The parties are owners of adjoining lots in the Jarvis Acres Subdivision in Benton County. At the time the Coxes purchased their lot, they were aware that the land was encumbered by protective covenants, which included the following:

> 5. No building shall be located on any tract nearer than 25 feet to the front tract line or nearer than 50 feet to any side street line, or nearer than 50 feet to any interior tract line.

The Coxes began constructing a house on their lot in September or October of 1995. According to the Cliffords, they learned in December 1995 that the Coxes' unfinished deck extended beyond the fifty-foot setback to an interior tract line in violation of paragraph five. In January of 1996, the Cliffords obtained a survey for verification. Thereafter, they wrote the Coxes a letter in which they asked them what they planned to do about the violation of the covenants. The Coxes did not respond to the letter, but contacted the Cliffords on three separate occasions offering to purchase their property. The Cliffords declined, and on May 1, 1996, filed their complaint asking that the chancellor enter an order requiring the Coxes to remove their deck.

At a September 30, 1996 hearing, the chancellor heard testimony from both parties. Mr. Cox stipulated that his deck extended some seventeen feet onto the setback. Robert Cox, who built his brother's deck, explained that he "was trying to get the [Coxes] the best view of the lake I could." At the conclusion of the hearing, the chancellor concluded that the deck encroached upon the setback in violation of the protective covenants. The chancellor allowed the parties thirty days to file briefs on the issue of an appropriate remedy.

On November 4, 1996, the Cliffords filed a petition for hearing, alleging that, since the September 30, 1996, hearing in which the chancellor had found that the Coxes had violated the protective convenants, the Coxes had built onto their existing deck by adding a landing and stairs. On December 13, 1996, the chancellor conducted a second hearing in the matter. During the hearing, Mr. Cox explained that, "[i]n order to have access to the hot tub, I went ahead and added that much of a deck with just steps around it." He admitted that, in building this addition, he knew that he was doing so in the setback. At the conclusion of the hearing, the chancellor stated that he had visited the properties in question and "was unable to discern any interference" with the Cliffords' enjoyment of their property. Relying on *Stuttgart Electric v. Riceland Seed*, 33 Ark. App. 108, 802 S.W.2d 484 (1991),

the chancellor concluded that the removal of the deck "would be a harsh, drastic and totally inequitable remedy."

In their petition for review, the Cliffords argue that the Court of Appeals' decision in *Stuttgart Electric v. Riceland Seed*, *supra*, conflicts with this court's holding in *Hays v. Watson*, 250 Ark. 589, 466 S.W.2d 272 (1971). The subject of the *Stuttgart Electric* case was Riceland Seed's warehouse, which encroached Stuttgart Electric's land by 2.3 feet. In affirming the chancellor's decision denying Stuttgart's request to require Riceland to remove its warehouse, the Court of Appeals observed the chancellor's findings of fact that the encroachment was slight at only 2.3 feet and was not done intentionally; that Stuttgart had constructed a drainage pipe that encroached onto Riceland's property; and that removal of the warehouse would cost Riceland $10,000.00. Relying on the Restatement of Torts' general discussion regarding injunctions, the Court of Appeals held:

> We think the law, as indicated by the authorities . . ., holds that the right to an injunction requiring the removal of encroaching buildings upon the property of others is governed by equitable principles.

*Stuttgart Electric*, 33 Ark. App. at 114. In *Hays v. Watson*, *supra*, this court affirmed the chancellor's decision ordering removal of a sewer system constructed on two lots in a subdivision where protective covenants indicated that the lots were to be used for residential purposes. Recognizing the doctrine of strict construction, this court stated that, when the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed, and it is improper to inquire into the surrounding circumstances or the objects and purposes of the restriction for aid in its construction. *Hays*, 250 Ark. at 595. This court further explained that the strict rules of construction shall not be applied in such a way as to defeat the plain and obvious purpose of the restriction. *Id.*

■ ■ We try chancery cases de novo on the record, but do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Barber v. Watson*, 330 Ark. 250, 253, 953 S.W.2d 579 (1997); *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996). In

order to demonstrate that the chancellor's ruling was erroneous, the Cliffords must show that the trial court abused its discretion by making a judgment call that was arbitrary or groundless. *Id.* The Cliffords rely on this court's decision in *Hays v. Watson, supra,* a 1971 case. However, we have discussed our guidelines regarding land restrictions more recently in *Barber v. Watson*:

> Courts do not favor restrictions upon the use of land; if such restrictions exist, they must be clearly apparent. *Holaday v. Fraker,* 323 Ark. 522, 920 S.W.2d 4 (1996); *McGuire v. Bell,* 297 Ark. 282, 761 S.W.2d 904 (1988). The general rule governing the interpretation, application, and enforcement of restrictive covenants is the intention of the parties as shown by the covenant. *Holaday,* 323 Ark. 522, 920 S.W.2d 4. Where, however, the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed, so long as the meaning does not defeat the plain and obvious purpose of the restriction. *Id.* (*citing Hays v. Watson,* 250 Ark. 589, 466 S.W.2d 272 (1971)). Where no general plan of development exists, restrictive covenants contained in a bill of assurance are not enforceable. *McGuire,* 297 Ark. 282, 761 S.W.2d 904.

*Barber v. Watson,* 330 Ark at 254. While the chancellor relied on the general equitable principles recited in *Stuttgart Electric v. Riceland Seed, supra,* we conclude that our more specific rules relating to restrictive covenants govern the case at bar.

It appears undisputed that a general plan of development existed in Jarvis Acres. In this case, the language in paragraph five is clear that "[n]o building shall be located . . . nearer than 50 feet to any interior tract line." When the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed. *See Barber v. Watson, supra.* We have further held that, parties who take title to land with notice that it is subject to an agreement restricting its use will not, in equity and good conscience, be permitted to violate its terms. *Holaday v. Fraker, supra* (*citing Harbour v. Northwest Land Co.,* 284 Ark. 286, 681 S.W.2d 384 (1984)). Because the language of paragraph five is clear, the chancellor erred in examining the respective properties to determine whether the encroachment by the Coxes caused any interference with the Cliffords'

enjoyment of their land. Where the language of the restriction is clear, it is improper to inquire into the surrounding circumstances or the objects and purposes of the restriction for aid in its construction. *Hays v. Watson,* 250 Ark. at 595. Under these circumstances, we hold that the chancellor's findings and conclusions were an abuse of discretion; therefore, the case is remanded for the chancellor to enforce the covenant by requiring the removal of the encroachment.

Reversed and remanded.

CORBIN and THORNTON, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. Appellant asks this court to reverse the chancellor's ruling and strictly enforce the provisions of the protective covenant, without regard to the relative hardships to either party. The majority reverses the chancellor's decision on the ground that the terms of the protective covenants are unambiguous and, thus, must be strictly enforced. While I do not take issue with the majority's recitation of the general law on restrictive or protective covenants, I do not agree that every violation of a protective covenant mandates an injunction requiring removal of the offensive structure. Furthermore, I especially do not agree with the implication of this decision, that the chancellor, presiding over a court of equity, erred in balancing the equities and considering the relative hardships to the parties in this suit. Therefore, I respectfully dissent.

Appellant brought this suit in chancery court seeking an injunction to have the Appellees' deck removed because it is located within the fifty-feet setback, in violation of the protective covenants. Appellant asked only that the deck be removed, although approximately two feet of the house itself is located in the setback area. Appellant has been damaged in no way, shape, or form, nor does he even claim to be.

I believe the chancellor did all that he could to appropriately remedy this situation, conducting two hearings on the matter, reviewing the documents in question, and visiting the property. The chancellor ruled that from his inspection of the property, he was unable to discern any interference with Appellant's enjoyment

of his property caused by Appellees' deck. The chancellor ruled further that Appellant did not plead or prove any damages. The chancellor thus denied the requested injunction based on the fact that Appellant had not suffered any damage as a result of the location of the deck, reasoning:

> As we know, in this case, [Appellees'] structure does not encroach upon [Appellant's] land. A grant of mandatory injunction would have to be based solely on the fact that the covenants were breached.
>
> I am of the opinion that removal of the deck would be a harsh, drastic and totally inequitable remedy.

The chancellor did, however, award Appellant $2,500 in attorney's fees and costs. The chancellor relied on the holdings in *Stuttgart Elec. Co., Inc. v. Riceland Seed Co.*, 33 Ark. App. 108, 802 S.W.2d 484 (1991), and *Turpin v. Watts*, 607 S.W.2d 895 (Mo. App. 1980), in support of his conclusion. I believe those holdings are sound.

In *Stuttgart*, 33 Ark. App. 108, 802 S.W.2d 484, the plaintiff filed suit for injunction to require the defendant to remove a portion of its warehouse that encroached upon the plaintiff's property by 2.3 feet. The chancery court denied the requested relief, finding, among other things, that the encroachment by the warehouse was slight and was not done intentionally, and that removal of the building would be a harsh, drastic, and totally inequitable remedy. Relying on the *Restatement (Second) of Torts*, the court of appeals opted for a remedy that would balance all the equities and measure the "relative hardship" that would come to both parties:

> *Elementary justice requires consideration of the hardship the defendant would be caused by an injunction as compared with the hardship the plaintiff would suffer if the injunction should be refused.* Though the expression "balance of convenience" is sometimes used to designate the weighing process here involved, it does not state the proper test. . . . It cannot be summed up in any phrase less elastic than "relative hardship."
>
> In its broader aspects, the problem may be viewed as one of balancing all of the equities of the situation. This process first involves consideration of the relative hardships of the two parties; but it extends beyond hardships to other factors, such as the

character of the conduct (including the respective motives) of the defendant and the plaintiff that produced the situation and created the attendant hardships.

*Id.* at 114-15, 802 S.W.2d at 488 (quoting *Restatement (Second) of Torts* § 941 (1977)) (emphasis added). That decision is consistent with this court's recognition of the chancellor's duty to decide the credibility of the witnesses, weigh the evidence, and balance the equities. *See Blevins v. Wagnon*, 281 Ark. 272, 664 S.W.2d 198 (1984).

In *Turpin*, 607 S.W.2d 895, the Missouri Court of Appeals, Southern District, addressed a factual situation more closely akin to the situation here. There, the plaintiff and the defendant were neighbors in a lakefront subdivision. The plaintiff filed suit for injunction against the defendant, contending that the defendant had violated the provision of the restrictive covenants prohibiting any building within the setback adjoining the lake. The plaintiff claimed that the defendant's house was within the setback area and that it was obstructing the plaintiff's view of the lake. The Missouri court held:

> *More importantly, the relief sought is wholly disproportionate to the injury sustained.* Whatever status one accords the testimony of defendant's surveyor, it is clear that the obstruction of plaintiff's "view" is minimal. *To compel the defendant to raze and reconstruct his residence at a cost of nearly $39,000 so plaintiff might enjoy an unobstructed view of the lake would be manifestly inequitable.* Relief was rightfully refused upon this ground, if no other.

*Id.* at 901-02 (citations omitted) (emphasis added). I concur with the reasoning employed by the Missouri Court of Appeals, which is applicable to the facts of this case.

Here, Appellant and Appellees own neighboring lakefront property. Appellant filed this suit requesting injunction because Appellees violated the terms of the protective covenants pertaining to building in the setback area of the land. Unlike the present case, however, the plaintiff in *Turpin* at least claimed to be damaged by the location of the defendant's house. Still, the court found that the grant of an injunction requiring the defendant to remove the house would be inequitable.

In *Hays v. Watson,* 250 Ark. 589, 466 S.W.2d 272 (1971), relied upon heavily by Appellant, the defendant Hays maintained a trailer park on land adjoining Watson's subdivision. Hays purchased lots 3 and 4 from Watson and, immediately thereafter, started construction of a sewage disposal system, which would service forty-five trailer spaces. Watson filed suit against Hays, alleging that Hays had violated the terms of the restrictive covenants for the subdivision. The chancellor ruled in favor of Watson and ordered that Hays restrict the use of his sewage disposal system to a single-dwelling unit, as set out in the covenants. The chancellor observed that, although proof of damages was not necessary to obtain an injunction, Watson was being damaged by the location of the sewage disposal system, as he had been unable to sell any additional lots since construction of the sewage system had begun.

Here, unlike the plaintiff in *Hays,* Appellant has not been damaged. There was no testimony that the location of Appellees' deck affected Appellant's use and enjoyment of his property, or that it lowered the value of his property. Moreover, Appellees' deck is not encroaching onto Appellant's property; rather, the deck occupied approximately seventeen feet of land in the setback area. Appellant did not plead or allege that he had been damaged by Appellees' construction of their deck. Given the lack of harm to Appellant, the holding in *Hays* is distinguishable.

In conclusion, I believe that the chancellor fulfilled his duty by weighing the evidence, determining the credibility of the witnesses, and balancing the equities and relative hardships involved. While there is no question that the covenants were violated, I disagree that the only remedy available in such a situation is a mandatory injunction for removal of the structure. Accordingly, given the total absence of harm or injury to Appellant, I would affirm the chancellor's conclusion that forcing Appellees to remove the deck would be unjust under the circumstances.

THORNTON, J., joins in this dissent.