2009 Ark. App. 474

**John ADAMS and Marie Adams, His Wife, Appellants,**

v.

**Bill MOODY, Appellee.**

**No. CA 08–870.**

Court of Appeals of Arkansas.

June 17, 2009.

John P. Adams and Anne Marie Adams, pro se.

Johnson, Sanders & Morgan, by: Roger L. Morgan, Mountain Home, for appellee.

ROBERT J. GLADWIN, Judge.

Appellants John and Marie Adams appeal the dismissal of their counterclaim and entry of a default judgment against them granted by the Baxter County Circuit Court on April 21, 2008. On appeal, appellants contend that the trial court abused its discretion in granting the default judgment and dismissing the counterclaim and erred in enjoining appellants to comply with restrictive covenants. We affirm.

Appellee Bill Moody filed suit on December 29, 2005, against appellants who own real property adjacent to his on the White River in Baxter County, Arkansas. Appellee claimed that appellants' property was subject to restrictive covenants that had been breached by appellants. Appellee contended that the violation of the restrictive covenants had caused the value of his own property to diminish and that he was entitled to damages against appellants. He also asked that appellants be enjoined from the described violations and that they bring their property into compliance with the restrictive covenants.

Appellants filed on March 6, 2006, a motion for extension to file an answer claiming that appellant John Adams had undergone three surgeries since February 2006, and was bedridden. Appellants sought an additional forty-five days to file an answer or responsive pleading. The trial court granted the extension up to and including May 1, 2006.

On April 21, 2006, appellants filed a motion for an additional extension of time to file an answer. They alleged that appellant John Adams had undergone five surgical procedures since November 11, 2005, and would have to undergo an additional surgery, which was scheduled for April 26, 2006. Appellant John Adams claimed in the motion that he was not physically or emotionally able to participate in the litigation at that time. He further stated that he was not medically released from his physicians and would not be for several months. He attached letters from an attorney and two doctors in support of his motion.

On April 25, 2006, appellee filed an objection to appellants' motion for additional time to answer. By May 1, 2006, no order was entered that addressed the motion for additional time to file an answer. However, on May 3, 2006, appellants filed a reply to appellee's objection to their request for an extension. In it, they claimed that when the first extension was granted, they were unaware appellant John Adams would have to have an additional surgery on April 26, 2006.

Appellee filed a motion for default judgment on May 17, 2006. Appellants filed their answer to the complaint on May 30, 2006, the same date on which they claim they received their copy of the motion for default judgment. They claimed that the appellee did not mail his motion for default judgment to them until seven days after the date of the certificate of service on the motion. In their answer, appellants alleged that the restrictive covenants were no longer enforceable; that appellee had unclean hands; that no other neighbors joined the lawsuit; and that any non-conforming structure had been in place for nine years before appellee bought his property. Appellants also claimed that there was nothing in the restrictive covenants that required a "spirit of the covenants" and raised the affirmative defenses of laches, statute of limitations, estoppel, and unclean hands. Appellants also filed a counterclaim on the same date. On June 2, 2006, appellee filed a motion to strike appellants' answer and counterclaim pursuant to Rule 12 of the Arkansas Rules of Civil Procedure.

Appellants argued before the trial court that they had been told by the court clerk "not to worry" each time they made inquiries about their pending motion for extension and that the trial court would contact them once a ruling had been made. Appellants claimed that they relied upon these statements. After a hearing on the default judgment, the trial court entered an order on April 9, 2007, which states in part as follows:

When a pleader fails to assert a counterclaim, he shall be entitled to assert such

counterclaim by amended or supplemental pleading subject to the requirements and conditions of Rule 15 of the Arkansas Rules of Civil Procedure. ARCP 13(e). However, the time limits on answers apply to counterclaims. In other words, in order ⌊₄to have the right to assert a counterclaim, a defendant has to have filed a timely answer or response to the complaint.

For these reasons, the Plaintiff's motion to strike the Defendant's counterclaim should be and hereby is granted. The Defendants may attempt to assert their claim by separate action. The Plaintiff's attorney shall contact the Court's Trial Court Assistant to schedule a date for hearing on damages on the Plaintiff's default judgment and give notice of the date and time of said hearing to the Defendants.

On April 12, 2007, appellants filed a motion for disposition of appellee's motion for default judgment contending that the trial court failed to address the issue of default judgment in its April 9, 2007 order. On August 3, 2007, appellants filed a motion to strike demand for default judgment arguing that the motion was technically deficient because the certificates of service on both the motion and brief stated that they were mailed on May 17, 2006, but were postmarked on May 24, 2006.

The trial court heard testimony on October 23, 2007, from appellants as to their arguments that the default judgment and dismissal of their counterclaim should be set aside. The trial court then denied all of appellants' motions and heard testimony from appellee as to damages. A judgment was filed on April 21, 2008, finding that appellants were in violation of the restrictive covenants and ordering them to comply with those covenants. The trial court further ordered appellants to remove the structure, which is nearer than five feet to a side line, and clean up and remove the clutter and other debris on their lot within fourteen days of the date of the judgment. Appellants were also ordered to finish all the structures on their property, bringing them fully into compliance with the restrictive ⌊₅covenants within ninety days of the date of the judgment. Appellants filed a notice of appeal on April 29, 2008, and this appeal followed.

Our supreme court set forth the standard of review in default-judgment cases as follows:

> This court has elected to follow the federal courts in considering "opposition to a motion for entry of a default judgment as a motion to set aside a default judgment." *B & F Eng'g, Inc. v. Cotroneo,* 309 Ark. 175, 178, 830 S.W.2d 835, 837 (1992). Therefore, Rule 55 of the Arkansas Rules of Civil Procedure applies to these cases. This court reviews a circuit court's decision not to set aside a default judgment under Rule 55 under an abuse-of-discretion standard. *Nucor Corp. v. Kilman,* 358 Ark. 107, 117, 186 S.W.3d 720, 726 (2004). The same standard applies to a circuit court's decision to grant or deny an opposed motion for default judgment. *See B & F Eng'g,* 309 Ark. at 178, 830 S.W.2d at 837.

*Solis v. State,* 371 Ark. 590, 597, 269 S.W.3d 352, 357–58 (2007).

■ Appellants argue that the trial court erred and abused its discretion when it granted a default judgment against them and dismissed their counterclaim. In support of this argument, appellants first claim that they relied on statements and representations made by the trial court and court officer. They contend that the court clerk told them "not to worry" and that the court would contact them when a ruling on the motion was made. Appellant Marie Adams claims that this happened on several occasions. Appellants cite Arkan-

sas Rule of Civil Procedure 55(c)(1), which allows for a default judgment to be set aside for mistake, inadvertence, surprise, or excusable neglect. Appellants maintain that appellant John Adams's health problems and their being lulled into a false sense of security by the court clerk fall within Rule 55(c)(1).

Appellants cite *Fitzwater v. Harris,* 231 Ark. 173, 176, 328 S.W.2d 501, 503 (1959), where our supreme court held that failure to file an answer within the required time to be either "excusable neglect" or "other just cause" under Act No. 53 of 1957. That Act had been amended to include language that a default should be ordered "where an appearance or pleading, either general or special, has not been filed within the time allowed by this Act." *Id.* at 175, 328 S.W.2d at 503. Appellants herein point out that the attorney in *Fitzwater* had been "lulled into a feeling of security that the case would not be tried before" a certain date due to both parties' agreement and language exercised by the circuit judge. *Id.* at 176, 328 S.W.2d at 503.

Appellants also liken their case to *Leaming v. McMillan,* 59 Ark. 162, 26 S.W. 820 (1894), where our supreme court set aside a dismissal where, on an application by an administrator to set aside a judgment of dismissal rendered against his decedent, it appeared that the decedent was at the time of the dismissal eighty years of age, feeble, and unable to leave the house, and that his attorney was summoned to a distant place on account of illness of his wife. *Id.* The court also held that the plaintiff's cause of action was meritorious; and therefore, the dismissal was set aside. *Id.* Appellants herein contend that the illness of appellant John Adams was so severe as to ·prevent him from appearing, as well as his wife because she was his caretaker.

■ Appellee argues, and we agree, that appellants were incorrect to rely on the statements made by the trial-court judge and the court officer. It is clear that a motion for additional time in which to answer a complaint does not extend the time for filing an answer under Arkansas Rule of Civil Procedure 12. *See Friend v. Goslee,* 276 Ark. 484, 637 S.W.2d 568 (1982). The burden is on the movant to obtain a ruling from the trial court, and a failure to do so constitutes a waiver of the motion. *See Rea v. Ruff,* 265 Ark. 678, 580 S.W.2d 471 (1979). Here, the trial judge did not extend the time frame from May 1, 2006, in which to file an answer, and therefore, appellants were in default when they did not file an answer on or before May 1, 2006. The burden was on appellants to ascertain whether the trial judge had extended the time to file an answer.

Second, appellants claim that default judgments are not favorites of the law. *Nat'l Sec. Fire & Cas. Co. v. Barnes,* 65 Ark.App. 13, 984 S.W.2d 80 (1999). They allege that Arkansas Rule of Civil Procedure 55 was revised in 1990 so that more cases would be decided on the merits instead of upon the technicalities that often lead to default judgment. *See Richardson v. Rodgers,* 334 Ark. 606, 976 S.W.2d 941 (1998). Courts now have discretion in determining whether to grant a default judgment under Rule 55. *Id.*

■ It is true that default judgments are not favorites of the law. However, under Rule 55(c), it was proper for the trial court to enter a default judgment and refuse to set aside such default. Under Arkansas law, the failure to attend to business is not excusable neglect for default-judgment purposes. *Israel v. Oskey,* 92 Ark.App. 192, 212 S.W.3d 45 (2005). Appellee also asserts that appellant John Adams's health condition did not prevent

appellants from filing numerous pleadings prior to the May 1, 2006 deadline.

Third, appellants contend that appellee's motion for default judgment was technically deficient and should have been set aside. Appellants cite Arkansas Rule of Civil Procedure 5, which provides in part:

> Every pleading, paper or other document required by this rule to be served upon a party or his attorney, shall contain a statement by the party or attorney filing same that a copy thereof has been served in accordance with this rule, stating therein the date and method of service and, if by mail, the name and address of each person served.

Ark. R. Civ. P. 5(e).

Rule 7 of the Arkansas Rules of Civil Procedure states in part: "The rules applicable to captions, signings, and other matters of form of pleadings apply to all motions and other papers provided for by these rules." Ark. R. Civ. P. 7(b)(3). Appellants argue that statutory service requirements must be strictly construed. *See Raymond v. Raymond,* 343 Ark. 480, 36 S.W.3d 733 (2001). Appellants also cite *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.,* 353 Ark. 701, 120 S.W.3d 525 (2003), where our supreme court held that the service requirements imposed by the Arkansas Rules of Civil Procedure were not strictly complied with when the deadline for responding to the complaint was misstated.

Here, appellants contend that appellee's attorney filed his motion for default judgment on May 17, 2006, with a certificate of service alleging the motion was mailed to appellants on that same date. However, the motion was not mailed until May 24, 2006, as evidenced by the postmarked date on the envelope. Therefore, appellants maintain that service on them was not strictly in compliance with the rules and is invalid.

Appellee argues that the motion for default judgment was not technically deficient and should not be set aside. He contends that on May 17, 2006, he filed his motion for default judgment, and on May 22, 2006, he provided appellants with a copy of the motion. In a letter attached to the motion, he informed appellants that a hearing would be held on the motion on June 20, 2006. A hearing was then held on September 26, 2006, and a final hearing was held on October 23, 2007. He claims that appellants had ample opportunity to present their side of the issue, and the fact that there was a delay in mailing the motion to them did not prejudice them in any way. He contends that appellants' case was presented on two different days by two different lawyers, and they were provided with every opportunity to present their case. We hold that the trial court did not abuse its discretion in granting a default judgment where the delayed mailing of the motion did not prevent appellants from presenting their case.

Fourth, appellants claim that they demonstrated legitimate defenses and meritorious claims as required by Rule 55, such as laches, statute of limitations, estoppel, real party of interest, waiver, and lack of subject-matter jurisdiction. They argue that the structures complained of by appellee are actually on the Corps of Engineers' flowage easement and not subject to the restrictive covenants or the trial court's subject-matter jurisdiction. Their other defenses included that they owned their property for nine years before appellee purchased his. Further, no other persons in the subdivision had ever complained, and the restrictive covenants had never been enforced, arguably making them no longer enforceable.

■ The naked allegation that a party has a meritorious defense does not warrant setting aside a default judgment. *Abercrombie v. Richards*, 248 Ark. 1322, 455 S.W.2d 887 (1970). Appellee states that the supreme court defined a meritorious defense as follows:

> [I]t is evidence (not allegations) sufficient to justify the refusal to grant a directed verdict against the party required to show a meritorious defense. In other words, it is not necessary to prove a defense, but merely present sufficient defense evidence to justify a determination of the issue by a trier of fact.

*Tucker v. Johnson*, 275 Ark. 61, 66, 628 S.W.2d 281, 283 (1982), *distinguished on other grounds by Clouse v. Ngau Van Tu*, 101 Ark.App. 260, 274 S.W.3d 344 (2008). Appellee claims that appellants' pleadings, which were filed late, contain mere allegations that defenses exist. They have offered no proof to support the mere allegations contained in the pleadings, and failed to prove that a meritorious defense existed. We hold that the trial court did not abuse its discretion in determining no meritorious defense was presented.

Finally, appellants assert that substantial compliance bars a default judgment against them. Appellants claim that the filing of any responsive pleading, even one that does not go to the merits of the case, has been held sufficient compliance to prevent a default judgment. *See West v. Page*, 228 Ark. 13, 305 S.W.2d 336 (1957) (where a building contractor filed a complaint in chancery court and summons was served on January 11, and on January 26, the building owners filed a motion to transfer the cause to circuit court; such motion was held to be in compliance with the statutory requirement that the "defense" to the complaint be filed within twenty days). Appellants contend that their filing of two motions for extension of time to file an answer should be considered substantial compliance.

However, appellants' motion to extend time to file an answer was not a substitute for the filing of an answer. Appellants are wrong when they claim that substantial or sufficient compliance existed to bar the entry of a default judgment. As stated above, a motion for additional time in which to file an answer does not extend the time for filing an answer under Arkansas Rule of Civil Procedure 12. *See Friend*, supra. Based upon the foregoing, we hold that the trial court did not abuse its discretion in granting the default judgment and refusing to set it aside.

Where a case is tried with the circuit court sitting as the trier of fact, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *White v. McGowen*, 364 Ark. 520, 222 S.W.3d 187 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.* Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.*

■ Appellants' second point on appeal is that the trial court erred in its order of damages enjoining them to comply with restrictive covenants. Appellants argue that appellee failed to present any proof to support his allegation that the structures on appellants' property were not erected with FHA approved materials, as was found by the trial court. Appellants claim that this issue was not raised in the petition and therefore cannot be considered by the court. Appellants then refute all the testimony offered by appellee at trial. Ap-

pellants conclude this argument by claiming that their property does not constitute a nuisance as defined by *Black's Law Dictionary*.

■ Appellee points out that the findings contained in the judgment of the trial court follow the appellee's petition. Appellants failed to answer that complaint, and appellants' default admits to be true all material allegations set forth in the complaint. *See Shelton v. Landers*, 167 Ark. 638, 270 S.W. 522 (1925).

Appellants also contend that the trial court erred in its order of damages because the right to an injunction requiring the removal of encroaching buildings is governed by equitable principles. Appellee testified that the storage structure on appellants' property is not within five feet of the property line as required under the restrictive covenant, but was within a matter of inches. However, appellants maintain that appellee offered no proof to support his allegation. Appellants argue that there is no encroachment on appellee's property, but if so, it is only slight and was not done intentionally. Therefore, removal of the building would be a harsh, drastic and totally inequitable remedy. *See Stuttgart Elec. Co. v. Riceland Seed Co.*, 33 Ark.App. 108, 802 S.W.2d 484 (1991) (where this court held that the right to an injunction requiring the removal of encroaching buildings upon the property of others is governed by equitable principles); *see also Clifford Family Ltd. Liability Co. v. Cox*, 334 Ark. 64, 971 S.W.2d 769 (1998) (where our supreme court held that the chancellor erred in examining respective properties to determine whether encroachment interfered with landowners' enjoyment of their land, rather than enforcing covenant by requiring removal of encroachment).

Appellants also rely on Arkansas Code Annotated section 18–11–501, which provides:

Circuit Judges are authorized to exercise their discretion to balance the equities between or among parties when considering whether to award injunctions or damages in cases involving encroachment of interior setback lines in residential subdivision restrictive covenants.

Appellants argue that, considering all the facts and evidence, it was clearly erroneous for the trial court to order the removal of their storage building as it was a harsh, drastic and totally inequitable remedy.

Appellee argues that the findings of the trial court are based upon appellee's uncontradicted testimony. Appellee testified about the clutter and debris on the property, that a structure was within inches of the property line, and that the cabin was less than 900 square feet and does not meet federal housing standards. We hold, therefore, that there was ample uncontradicted evidence to support the trial court's findings, and the trial court was not clearly erroneous in its decision.

Finally, appellants argue that the trial court's injunction order was clearly erroneous because restrictive covenants may be lost due to laches, unclean hands, statute of limitations, waiver, acquiescence, or when enforcing them would be oppressive and inequitable. Appellants contend that appellee admitted that both of appellants' structures were on their property when he purchased his adjacent property in 2004. He never questioned appellants about whether their cabin met the requirement of 900 square feet, nor did he mention that he thought the storage building was not within the required five-foot side setback. Appellants contend that they were not made aware of these allegations until the complaint against them was filed by appellee. Further, the restrictive

covenants do not have time limitations or restrictions to erect structures or improvements on the property. Appellants maintain that they have not completed construction of their cabin, and that appellant John Adams has been unable to perform further substantial work on the property due to his surgeries.

Appellee claims that appellants failed at the trial court to offer any proof on this matter or to raise these defenses in any way. He contends that appellant Marie Adams's testimony does not support any of the defenses raised by appellants. The only issue addressed by Mrs. Adams was the reason for not filing a timely answer. Because the trial court's order enjoining appellants to comply with the restrictive covenants was not clearly against the preponderance of the evidence, we affirm.

Affirmed.

PITTMAN, ROBBINS, and KINARD, JJ., agree.

HART and GRUBER, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting.

There are many reasons why this case should be reversed. First and foremost, the majority fails to address, except in a cursory fashion, the gravamen of the Adamses' second major point. The Adamses assert that the proof that their dwelling did not comport with FHA regulations was incompetent because Moody was not qualified to so opine. Further, the regulations, which could speak for themselves, were not introduced into evidence. While it is true that Moody testified, in a conclusory fashion and over the Adamses' objection, that the house did not meet FHA standards, this hardly constitutes "uncontradicted evidence." *See Dacus v. Burns*, 206 Ark. 810, 177 S.W.2d 748 (1944). However, even if the majority was

able to correct these deficiencies in its opinion, it cannot escape the fact that there is merit in the Adamses' argument.

When there is a default judgment entered in, for instance, a personal injury case, liability is deemed established and only damages need be proven. This process, however, does not easily fit the case at bar, where the relief requested is not monetary, but injunctive. The Adamses were ordered to make their dwelling conform to FHA regulations. But as noted previously, the regulations were not entered into evidence (and no request to take judicial notice of the regulations was made). Further, there was no competent testimony as to how the dwelling did not conform to FHA regulations.

This situation is of great consequence because the judgment can only be enforced with the trial court's contempt power; there is no monetary judgment to execute. In the event that a contempt petition is necessary, the Adamses have not been told in the order currently before us what they were required to do to make their house conform to FHA regulations. To enforce this order, the trial court would be required to first determine what the FHA regulations require and then how the Adamses' house does not conform to these regulations. This is the proof that should have been presented in the instant case.

The same problem applies to the trial court's order that the Adamses remove a storage shed that is nearer than five feet from the property line. There is no proof, however, of where the property line was located. How will any court know if the Adamses have complied with its directive? Before a person can be held in contempt for violating a court order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002). In effect, the trial

court has entered an unenforceable order. I would reverse this case and order the trial court to conduct a full merits hearing on this issue.

I also find significant problems with the majority's handling of the Adamses' first point. First, it is worth noting that this case is not a typical default judgment where, after good service, a defendant never acknowledges that a lawsuit has been filed against him or her. Indeed, the Adamses did respond, albeit not with a typical "answer." Accordingly, I find merit in the Adamses' argument that the filing of their motions for extension of time to file an answer was a sufficient response so as to prevent a default. Arkansas Rule of Civil Procedure 55(a) states:

*When Entitled.* When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, judgment by default may be entered by the court.

The reporter's note to Rule 55 indicates that the phrase "otherwise defend" in Rule 55(a) means the filing of motions, which is equivalent to "appearing." (The commentary cites *Tapp v. Fowler*, 291 Ark. 309, 724 S.W.2d 176 (1987), which so holds.) "Appearance" is defined as "A coming into court as party to a suit, either in person or by attorney, whether as plaintiff or defendant. The formal proceeding by which a defendant submits himself to the jurisdiction of the court." *Black's Law Dictionary* 63 (6th ed.1991). The majority attempts to sidestep this issue by citing *Friend v. Goslee,* 276 Ark. 484, 637 S.W.2d 568 (1982), for the proposition that a motion for additional time is not a substitute

for filing an answer. This authority, however, is inapposite as *Goslee* clearly does not answer the question. Moreover, *Goslee* expressly states that Rule 55 was not raised at the trial court or on appeal and therefore was not considered. Although the trial court had within its discretion the authority to strike the Adamses' affirmative defenses and deny permissive joinder of the Adamses' counterclaim,[1] I believe it clearly erred by not allowing this case to proceed on the merits and requiring Moody to prove his case.

However, even assuming for argument's sake that the trial court was correct in granting a default judgment, I believe its reasons for refusing to set it aside are not sound, and the majority fares no better. I believe that the Adamses demonstrated legitimate defenses and meritorious claims and met the criteria set forth in Arkansas Rule of Civil Procedure 55. In their answer, the Adamses raised laches, statute of limitations, estoppel, real party in interest, waiver, and lack of subject-matter jurisdiction as defenses. The Adamses also made factual assertions in support of these defenses. I have found no case that states that he must do more. I believe the majority's reliance on *Abercrombie v. Richards*, 248 Ark. 1322, 455 S.W.2d 887 (1970), is misplaced. While *Abercrombie* does state that a litigant must do more than make a "naked allegation that it has a meritorious defense," I am only able to glean from the case that the appellant merely said he had a "meritorious defense," without informing the trial court what those defenses were. Obviously Rule 55 does not require a trial on

---

1. Although the trial court had the authority to strike the Adamses' counterclaim, it is puzzling that the trial court would choose to do so. The counterclaim sought monetary and injunctive relief against Moody for harassment as a declaratory judgment concerning new restrictive covenants that Moody had sponsored. It was clearly a permissive counterclaim, but if the trial court had even a passing interest in judicial economy it seems logical that the counterclaim could have been taken up while both parties were in court.

these defenses before the defenses can be asserted in the real trial.

Finally, I believe that there is merit to the Adamses' argument that Moody's motion for a default judgment was "technically deficient" and should be set aside. In his certificate of service for his Motion for Default Judgment, Moody recites that,

> This is to certify that a copy of the foregoing document has been served on the [sic] John Adams and Marie Adams, his wife by mailing a copy to them at 1251 Vistaview, Cove, Memphis, TN 38127, postage prepaid, this 17th day of May, 2006.

The same certificate of service was attached to Moody's brief in support of his motion. However, the transmittal letter was dated May 22, 2006, and the envelope was postmarked May 24, 2006.

The majority suggests that this case is simply controlled by Rule 5 of the Arkansas Rules of Civil Procedure, and parrots Moody's assertion in disposing of this issue by stating that the Adamses suffered no prejudice. However, a closer reading of Rule 5 indicates that this issue is not so easily taken care of. Rule 5 states:

> (a) Service: When Required. Except as otherwise provided in these rules, every pleading and every other paper, including all written communications with the court, filed subsequent to the complaint, except one which may be heard ex parte, shall be served upon each of the parties, unless the court orders otherwise because of numerous parties. No service need be made upon parties in default for failure to appear, except that pleadings asserting new or additional claims for relief against them shall be served in the manner provided for service of summons in Rule 4. Any pleading asserting new or additional claims for relief against any party who has appeared shall be served in accordance with subdivision (b) of this rule.

By concluding that Rule 5 authorized Moody to serve his motion for default judgment by regular mail, the majority has acknowledged that the Adamses had appeared, so granting a default judgment was not appropriate.

However, even assuming that service by regular mail was appropriate in this case, I cannot subscribe to the majority's approval of Moody's demonstrably false affidavit of service, by its conclusion that the Adamses suffered no prejudice. I note that the supreme court's latest case regarding service—admittedly of the summons and complaint under Rule 4 of the Arkansas Rules of Civil Procedure—*Trusclair v. McGowan Working Partners,* 2009 Ark. 203, 306 S.W.3d 428, suggests that lack of prejudice is not dispositive and that compliance with our rules for service must be "exact."

I believe that the best course of action would be for this court to reverse this case.